## MORGAN v. COMMISSIONER OF IN-TERNAL REVENUE.
### No. 6611.

Circuit Court of Appeals, Seventh Circuit.
April 22, 1939.

Brode B. Davis and Arthur M. Kracke, both of Chicago, Ill., for petitioner.

Berryman Green, Sp. Asst. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and Sewall Key and Lee A. Jackson, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

Petitioner seeks a review of a decision of the United States Board of Tax Appeals affirming the determination by the Commissioner of Internal Revenue of a deficiency in the estate tax liability of the estate of decedent, Elizabeth S. Morgan. The asserted deficiency resulted from the inclusion in the value of the gross estate of decedent the value of certain property in respect to which the decedent held powers of appointment, which powers she had exercised by her last will.

The Commissioner's action was predicated upon the following provisions of the Revenue Act:[1]

"Sec. 302 [§ 411]. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *—

\* \* \* \* \* \*

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will * * *."

The decedent died testate in 1933 while a citizen of the United States and a resident of the state of Wisconsin, and the petitioner is the duly appointed executor of her last will and testament. Decedent's father, by his will and several codicils thereto, created a trust for the benefit of his children. The trust estate was divided into nine parts, the part numbered five being conveyed in trust for decedent's benefit as follows:

"Item Fifteen: I direct said trustees to pay to my daughter Elizabeth S. Morgan annually the net annual income from part numbered five (5) into which my trustees shall have divided my estate * * *

"I give, devise and bequeath to the appointee or appointees of my daughter Elizabeth S. Morgan by her last will and testament all property of any nature and kind in the hands of my said trustees at the time of her death constituting said part five (5) * * *"

Shortly before his death the father of decedent executed a deed of trust to continue for a period of 21 years after his death. The trust property was divided into parts and one part was allocated to each beneficiary. The following provisions of the deed of trust relate to decedent:

"7. After my death and during the continuance of the trust hereby created, said Trustees shall pay annually to my daughter Elizabeth S. Morgan the net annual income from said part numbered five (5).

"If my daughter Elizabeth S. Morgan shall be living at the time of the termination of this trust, said Trustees shall transfer to her all property then in their possession constituting said part five (5).

"If my daughter Elizabeth S. Morgan shall die prior to the termination of said trust, then said Trustees shall pay annually the net annual income from said part five (5) to such person or persons as she may appoint by her last will and testament duly admitted to probate, and at the termination of this trust said Trustees shall transfer the property then in their possession constituting said part five (5) to such person or persons as she may appoint in the manner aforesaid."

In her will decedent exercised the powers of appointment granted by her father's will and by the deed of trust, respectively, the appointments being in the following words:

"Twenty-second: Under the last will and testament of my father * * * I do hereby nominate, constitute, authorize, and appoint my husband, J. Earl Morgan * * *

"Twenty-third: Under the Deed of Trust dated May 12, 1917, * * * I do hereby appoint my husband, J. Earl Morgan * * *"

It is not questioned that under the law of Wisconsin the property, which the Commissioner included in decedent's estate under authority of Section 302(f), passed to decedent's appointee by virtue of the exercise of the powers of appointment. Section 302(f) selects a particular type of transmission of property through a power of appointment, a type of transmission which is essentially a testamentary disposition, and treats such transmission as a transfer of estate property of the decedent who exercises the power of appointment. In the instant case the decedent had the income of the trust property during her life with the right ultimately to receive the corpus; and under the powers of appointment she had full power to dispose of all of her property interest after her death to whomsoever she might select as her appointee, or appointees. She exercised her powers of appointment by will and under the law of Wisconsin all of the interest which she had in the property passed to her appointee. Consequently, the precise question for decision by this Court is whether the powers of appointment were general powers within the meaning of that term as used in Section 302(f) of the Revenue Act of 1926, as amended.

---

[1] Sec. 302(f) Revenue Act of 1926, as amended by Sec. 803(b) of the Revenue Act of 1932, 26 U.S.C.A. § 411(f).

It is petitioner-appellant's contention (1) that powers of appointment granted in language substantially the same as that used in the grants in the instant case have been held to be special powers by the Supreme Court of Wisconsin; and (2) that those decisions apply to the facts in the instant case and require the conclusion that the powers in question are special powers, and a holding that the property passing from decedent under her exercise of the powers was improperly included by the respondent, Commissioner, in decedent's gross estate. The foregoing contention presupposes that the language which grants the powers in the instant case must be tested by the definitions of general and special powers recognized by the law of Wisconsin.

■ The term "general power of appointment" has a well defined legal meaning. Ordinarily it designates a power to appoint any person or persons in the discretion of the donee of the power; and a power of appointment is general regardless of the extent of the property interest which is transferred by the exercise of the power. It is the limitation on the discretion of the donee in the selection of the appointee, or appointees, that distinguishes a special power of appointment from a general. By Treasury Regulation the former meaning of general power of appointment is adopted.

The following definition has been uniformly recognized by federal courts as a correct statement of the meaning of "general power" as that term is used in the Revenue Act: "A power of appointment is general when it is exercisable in favor of any person the donee may select, and special or limited when it is exercisable only in favor of persons or a class of persons designated in the instrument creating the power. * * *"[2]

■ We accept the foregoing definition of general power of appointment for the purpose of applying Section 302(f). The language which creates and grants the powers in the instant case places no restriction on the discretion of the grantee of the powers in respect to the selection of an appointee, or appointees. The language of the grants left the grantee free to exercise the powers of appointment in favor of any person whom she might select. In our opinion the powers were general powers within the meaning of Section 302(f) of the Revenue Act, and must be treated as such for purposes of this case unless some rule of Wisconsin law controls, as against Section 302(f), and requires a different result.

The Wisconsin case chiefly relied upon by petitioner is Cawker v. Dreutzer.[3] In the course of the opinion the Wisconsin Supreme Court stated that the power of appointment which was under consideration and which was granted in language substantially the same as the language used in the instant case was, by statutory definition, a special and not a general power.[4] The court stated that the power "is a special power * * * because it embraces an interest less than a fee." Respondent-appellee contends that the foregoing statement of the Supreme Court of Wisconsin was dictum. But granting that the statement expressed a holding, the significance of such a holding, for our present purposes, is that under the Wisconsin law the powers of appointment created by the language used in the will and deed herein involved embrace interests less than fees and are therefore, by statutory definition, special powers. But such a power satisfies the definition of a general power as that term is used in Section 302(f), even though it is characterized as a special power under statutory provisions in Wisconsin.

■ Petitioner relies on Leser v. Burnet, Commissioner,[5] for a holding that state law determines whether a power is general for federal taxation purposes. In that case decedent exercised a power of appointment and the question was whether the property passing under such exercise should be included in decedent's gross es-

[2] Johnstone v. Commissioner, 9 Cir., 76 F.2d 55, 57; certiorari denied 296 U. S. 578, 56 S.Ct. 89, 80 L.Ed. 408.

[3] 197 Wis. 98, 221 N.W. 401, 414.

[4] Statutes of Wisconsin, 1937, Sec. 232.05. "General power. A power is general when it authorizes the alienation in fee, by means of a conveyance, will, or charge of the lands embraced in the power, to any alienee whatever."

232.06. "Special power. A power is special: (1) When the person or class of persons to whom the disposition of the lands under the power to be made are designated. (2) When the power authorizes the alienation by means of a conveyance, will, or charge of a particular estate or interest less than a fee."

[5] 4 Cir., 46 F.2d 756, 758.

tate for the purpose of computing the federal estate tax. The Circuit Court of Appeals first determined, independently of any local statute or court decisions, the meaning of "general power" as used in the Revenue Act, and held that a general power "is meant one which may be exercised by the donee of the power in favor of any person whomsoever including the donee himself or his own creditors." The court then said that it was necessary to determine whether the power "is a general power within this meaning of the act of Congress"; and stated that this was to be determined by the law of Maryland. The court then pointed out that in Maryland such grants of power as the one in question were construed strictly, and that unless the language of the grant of power expressly states that the donee may exercise the same for his own benefit or for the benefit of his creditors, then the power does not include the right so to be exercised. And since the grant of power did not expressly so state, the court held that the power did not come "within the meaning of the general power of appointment as that term is used in the language of the revenue act." Clearly the court recognized that the definition of a general power for purposes of the Revenue Act is not dependent on state law but is a matter of federal law. The Court considered state law only for the purpose of determining whether the effect of this law upon the language in the grant of power so limited the grant that it did not come within the congressional standard of a general power.

In Burnet v. Harmel[6] the United States Supreme Court uses the following language: "For the purpose of applying this section to the particular payments now under consideration, the act of Congress has its own criteria, irrespective of any particular characterization of the payments in the local law. * * * The state law creates legal interests, but the federal statute determines when and how they shall be taxed. We examine the Texas law only for the purpose of ascertaining whether the leases conform to the standard which the taxing statute prescribes * * *." It is evident that in Leser v. Burnet, supra, the Circuit Court of Appeals was applying the rule implied in the foregoing statement of the Supreme Court. But the application of that princi-

ple cannot aid petitioner's cause in the present case since petitioner's position is that the standard is created and defined by state law. For petitioner to bring his cause within the reasoning and decision of Leser v. Burnet it would be necessary to show that the standard created by the federal law was not met in substance and in fact for the reason that under the Wisconsin law the language of the grant of power did not create a power which meets the standard prescribed by the taxing statute for a *general power*.

A recent decision of the Supreme Court in the case of Lyeth v. Hoey[7] is in point. In that case the taxpayer was an heir of the decedent whose will had been offered for probate in Massachusetts. The taxpayer began proceedings to contest the probate of the will on certain named grounds. A compromise agreement was thereupon entered into between the taxpayer and the legatee of the bulk of the estate, by the terms of which compromise the taxpayer received certain cash and property. The Commissioner assessed the value of the taxpayer's receipts under the compromise as income. The taxpayer filed suit for a refund, relying upon Section 22 (b) (3) of the Revenue Act of 1932, 26 U. S.C.A. § 22(b) (3), which exempts from income tax "the value of property acquired by * * * inheritance * * *." The United States Circuit Court of Appeals for the Second Circuit, 96 F.2d 141, declared the rule to be that whether the property was received by way of inheritance or otherwise depended on the law of the jurisdiction under which the taxpayer received it; and that under the Massachusetts decisions the taxpayer received the property by purchase and not by inheritance. The Supreme Court reversed the judgment of the Circuit Court of Appeals and held that the application of the Massachusetts rule was erroneous.

While recognizing that state law determines the rules, both substantive and procedural, relating to descent and distribution of property within the jurisdiction, the Supreme Court held that in case of receipt of property by an heir as a result of a compromise it is a federal question "whether what the heir has thus received has been 'acquired by inheritance' within the meaning of the federal statute * * *"

6 287 U.S. 103, 53 S.Ct. 74, 77, 77 L. Ed. 199.

7 305 U.S. 188, 59 S.Ct. 155, 158, 83 L.Ed. ——, 119 A.L.R. 410.

In harmony with the reasoning and holding in Lyeth v. Hoey, supra, we hold that in the instant case it is a question of federal law whether the property in question passed under a general power within the meaning of Section 302(f). Consistently with the implications of Lyeth v. Hoey, supra, and the holding in Leser v. Burnet, supra, we examine the law of Wisconsin to determine the scope of the powers granted by the language of the will and deed of trust and whether the property in question legally could be transferred by the exercise of the powers. But the scope of the powers having been determined, their generality for purposes of Section 302(f) is measured by the definition of "general power" recognized by federal law.[7a]

■ Congress can adopt as a part of federal law rules and standards recognized by local law; but such adoption must be indicated by express declaration or necessary implication. But we find no indication of congressional intention to adopt local definitions of "general power of appointment" and thus create diversity of administration of Section 302(f).[8]

■ Petitioner urges that even if the language of the grant of powers is sufficient to create general powers their generality is destroyed by certain provisions of the will and the deed of trust which petitioner contends create a right of veto of an appointment which might be made under the powers. This contention is not based upon any doctrine peculiar to the law of Wisconsin but upon petitioner's construction of the language of the provisions.

The clauses of the will and trust deed relied upon by petitioner provide that whenever in the judgment of the trustees there is danger that anything "coming to any beneficiary under this trust (or will)" will be dissipated through intemperate or spendthrift habits, lack of business capacity or subjection to injurious influences of others, or for any other reason, the trustees may withhold from such beneficiary as much as they deem advisable and pay and transfer as much as they deem advisable. Instead of doing the latter the trustees were authorized to expend the funds for the welfare and support of such beneficiary.

Petitioner construes "any beneficiary under this trust (or will)" to include appointees and insists that the power of the trustees to withhold income or installments of corpus from "unworthy beneficiaries" amounts to a veto of the power of appointment of decedent. But we are convinced that a reasonable construction of the language of the so-called *veto* clauses, in the light of related provisions of the will and deed of trust, precludes the inclusion of "appointee" in the term "any beneficiary."

Many carefully worded provisions both of the will and deed indicate clearly that decedent's father intended to differentiate between "beneficiaries" under his will and deed and "appointees" under the wills of his children to whom he had granted powers of appointment. The provisions in the deed of trust which dispose of property or income which is withheld from any "unworthy beneficiary" provide that the property or income shall be transferred to such issue of the unworthy beneficiary as would have taken the property so withheld "in case such unworthy beneficiary had died intestate at the time of such withholding;" and it is further required that in the event there should be no such issue at the time any such property should be payable or transferable, "then such trustee shall pay and transfer and distribute such property so withheld to and among the then other existing remaining parts." It will be noted that the withheld property is to go to the issue of the unworthy beneficiary who would have received it had the unworthy beneficiary died *intestate*. The trustor thus eliminated any appointee under the will of the unworthy beneficiary from participation in "withheld" property, and excluded any such appointee from the class

---

[7a] See Harvard Law Review, vol. 52, pp. 941, 942; Wisconsin Law Review, 1939, pp. 260, 261.

[8] "Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law. * * * There is no such expression or necessary implication in this instance. Whether what an heir receives from the estate of his ancestor through the compromise of his contest of his ancestor's will should be regarded as within the exemption from the federal tax should not be decided in one way in the case of an heir in Pennsylvania or Minnesota and in another way in the case of an heir in Massachusetts or New York, according to the differing views of the state courts. We think that it was the intention of Congress in establishing this exemption to provide a uniform rule." Lyeth v. Hoey, supra.

of potential "worthy beneficiaries" under the trust. In the case of a named beneficiary with power of appointment, such as the decedent, who dies intestate, the trust deed provides that when installments of net annual income shall be payable such installments shall be paid to issue then surviving, and that at the termination of the trust the trustees shall transfer all property then in their possession to the then surviving issue of the named beneficiary. Thus the trust instrument designates the class of persons who will constitute "worthy beneficiaries" for the purpose of receiving any payments which are withheld by the trustees from named unworthy beneficiaries. But there are no provisions in the trust deed which control the disposition of any appointee's interest in the trust property in case such appointee should die intestate.

Apt provisions in the will of the father of decedent provide for the disposition of the portion of each *named* beneficiary in case the named beneficiary should die without having exercised the power of appointment. But there is no language which purports to exercise any control over the property when it has passed to an appointee as a result of the exercise of the power of appointment. The provisions of the will which control the disposition of property or income withheld from an "unworthy beneficiary" require the same to be paid or transferred "to such other worthy beneficiary *under my will* who would have been entitled thereto in case such unworthy beneficiary had died." (Our italics.) But if an "appointee" is to be considered a beneficiary under the will of the father of decedent the trustees cannot identify the "worthy beneficiaries" under the will who are to receive withheld payments until the death of an "unworthy beneficiary" who holds a power of appointment. This follows from the fact that by the terms of the will the issue of a named beneficiary, who holds a power of appointment, receives the beneficiary's property interest in the testamentary trust only in case such beneficiary does not exercise his power of appointment in his will. And this cannot be determined until the death of the named beneficiary. Obviously the intent of the testator, as expressed in the terms of the testamentary trust, was that the trustees be able to select the worthy beneficiaries at the time that payments should be withheld from named unworthy beneficiaries, which could not be done if appointees were treated as beneficiaries under the will.

By the terms of the testamentary trust a named beneficiary who holds powers of appointment is entitled not only to payment of income but also to distribution of designated portions of principal at stated intervals over a period of sixteen years. But an appointee is entitled to the immediate possession and enjoyment of all property in the hands of the trustees at the death of the beneficiary-appointee. The foregoing is inconsistent with an intention on the part of the trustor to apply the *veto* provisions to appointees, since such possession presupposes a period during which the beneficiaries do not have possession and full enjoyment of the principal.

The father of decedent limited the grant of powers of appointment to his own children, both in the testamentary trust and the deed of trust, although in both the list of named beneficiaries included his wife, his own children, and his grandchildren. Furthermore, powers of appointment were not granted to all of his own children and in the case of some grantees the exercise of the power was conditioned upon the lack of issue at the time of the death of the grantee of the power. In the first paragraph of the deed of trust the trustor recites that it had been his observation that many widows and children had been unable to preserve the principal of the fortune they had inherited and that he desired to provide for the support of his wife and his children and grandchildren. In the testamentary trust there was also a declaration of desire to provide for trustor's wife and children and the issue of his deceased children. The provision authorizing the withholding of property from an "unworthy" beneficiary obviously is included to give effect to the foregoing desire of the trustor to assure financial security for his wife and for his children and their issue. There is nowhere in either trust instrument any indication of interest in the welfare of appointees or their issue. Having carefully chosen the grantees of powers of appointment, the testator evidenced no intention of controlling whatever property passed to any appointees.

In view of the foregoing we conclude that the so-called *veto* provisions do not authorize the trustees to withhold payments of income or installments of principal from appointees.

But even if it could be conceded that the provisions in question authorize the trustees to withhold payments from appointees, the possession of such discretionary power by the trustees does not qualify the general power of appointment of the named beneficiary. The trustees could not prevent the passing of the decedent's right in the trust property to any person appointed by the decedent, even though they might exercise some control over the enjoyment of the property by the appointee. As already stated, there is no provision in either the will or deed of trust which purports to control the descent of the property when once it has been vested in the appointee. The trustees have no control over the selection by a named beneficiary of an appointee; and the extent of the discretionary power of the trustee would be to interfere with an appointee's unrestricted enjoyment of the property.

We hold that the powers of appointment exercised by decedent under the trust and will of her father were general powers within the intent and meaning of Section 302(f), and that the transmission of the property interests in question by the exercise of the powers of appointment by decedent constituted a "passing [of property] under a general power of appointment exercised by the decedent (1) by will * * *"

The decision of the Board of Tax Appeals is affirmed.

LINDLEY, District Judge (concurring).

I am in accord with the conclusion reached, but it seems to me unnecessary to decide whether, under Blair v. Com'r, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, and Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. ——, 119 A.L.R. 410, decided Dec. 5, 1938 and other decisions of the Supreme Court, the character of the power involved is to be determined from consideration of the federal law alone, for I am of the opinion that under the laws of Wisconsin, also, the power was general in character. When it was exercised, the estate of the deceased, under the Wisconsin statutes, was augmented by the amount of property included in the devises and bequests as to which right of appointment existed.

The state statute is as follows:

"232.05 General power. A power is general when it authorizes the alienation in fee, by means of a conveyance, will, or charge of the lands embraced in the power, to any alienee whatever."

"232.06 Special power. A power is special: (1) When the person or class of persons to whom the disposition of the lands under the power to be made are designated. (2) When the power authorizes the alienation by means of a conveyance, will, or charge of a particular estate or interest less than a fee."

In asserting that the power involved is special in character, petitioner relies upon Cawker v. Dreutzer, 197 Wis. 98, 221 N. W. 401. That case concerned a power of appointment in favor of two daughters who were to have the income from the res for life with power of appointment by will. In default of such appointment, the issue of each daughter was to take her interest, and, if one of the daughters died without having exercised the power, the corpus of her interest was to pass to the other daughter, if surviving, or, if not, to that daughter's issue. One of the daughters filed a petition asking that her power be decreed to be general and her estate a fee. The time for exercise of the power had not arrived. As I read the case, the point involved here was not decided. Any language indicating the conclusion urged by petitioner was unnecessary to the decision. The court refused to pass upon the daughter's request that she had the absolute power of disposition on the ground that the request was not presented to or considered by the trial court. The Supreme Court left the question open.

Here the time for exercise of the power has arrived and it has been executed. I find nothing in the decisions indicating that the Supreme Court of Wisconsin would construe it as other than general in character. Indeed, that court, in the opinion cited, took cognizance of the fact that the Wisconsin statute defining powers of appointment had been adopted from New York and said that it should have the same interpretation in Wisconsin as in New York. Under the New York decisions, such a power as is here being considered is general. In re Lathers' Will, 137 Misc. 222, 243 N.Y.S. 380; Farmers' Loan & Trust Co. v. Shaw, 56 Misc. 201, 107 N.Y. S. 337.

Furthermore, the power of veto, if any can be attributed to the trustees, never having been exercised and the power to appoint having come to fruition, that is, the property having been disposed of un-

der the power, it should be included in the gross estate of the deceased. To my mind the Wisconsin statute so indicates, and, in the absence of an authoritative decision to the contrary, the Board properly included the property passing under the power. The situation is akin to that where a vested remainder is created, subject to a life estate, and the life tenant has, coupled with his life estate, the power to dispose of the fee and thus defeat the remainder. Quite generally it is the law that such a power to divest the remainder does not prevent the latter from vesting immediately. Burke v. Burke, 259 Ill. 262, 102 N.E. 293; Bradley v. Jenkins, 276 Ill. 161, 114 N.E. 582; Linn v. Campbell, 289 Ill. 347, 124 N.E. 622.