OSBURN, ADMINISTRATRIX, ETC. ET AL. *v.* MURPHY ET AL.

[No. 19,687. Filed November 12, 1963.]

*Frank I. Hamilton,* of Greensburg, for appellants.

*Virgil J. McCarty, Thomas J. O'Connor,* both of Brookville and *John H. Himelick,* of Connersville, for appellees.

PFAFF, J.—Appellants by this action sought to quiet the title to certain real estate. The court, upon request, made a special finding of facts, stated conclusions of law thereon, and rendered judgment adverse to appellants.

George R. Osburn died testate in 1909. After a bequest of all personal property to his son, William R. Osburn, his will provided:

"Item Three: I will, give, devise and bequeath unto my son, William R. Osburn, during his nat-

ural life all of the real estate of which I may die the owner, he to have the control, rents, issues and profits of the same so long as he lives.

"Item Four: I hearby appoint and constitute my son, William R. Osburn, as sole Executor of this will, hereby directing that he be not required to give any bond or to file any inventory of the assets of my estate. And I further grant unto him full power to dispose of the real estate on which I may die the owner of, and which is bequeathed to him in Item Three of this will, as therein provided. I hereby grant unto him full power to dispose of said real estate so owned by me at my death by will to take effect at his death. It is my intention by this item to grant unto my son, William R. Osburn, the power to disposition of said real estate by will, but not grant unto him power to sell and convey said real estate by deed during his lifetime. And that the power of disposition hereby given is confined solely in giving him the power to dispose of said real estate by will to take effect at his death."

There was no residuary clause.

When George R. Osburn died in 1909, his son, William R. Osburn, was his sole and only heir at law. William R. Osburn executed his will on January 31, 1946, and died on December 14, 1947. Item 6 of his will provides:

"I give and bequeath for and during their natural lives all the real estate which I may die *sized* of the Ululah Cranor Addison, Clarence Murphy, Loren Murphy and Kathleen Murphy Cook, they to receive the income derived from said property share and share alike. Upon the death of any of the above named then his or her share shall be vested in the survivor or survivors equally, so long as they shall live. Upon the death of all of the above named Ululah Cranor Addison, Clarence Murphy, Loren Murphy and Kathleen Murphy Cook, said real estate shall be vested in Marvin Eugene Cook, the son of Kathleen Murphy Cook. Should the said Marvin Eugene Cook be not liv-

ing at the time of the death of above named four, who have been given a life estate in said real estate, then same shall be vested in his lawful issue, if any. And if he should not be nor have any lawful issue then same shall go to any other lawful issue of Loren Murphy and Kathleen Murphy Cook that may be living at that time. In the event that such a situation should exist that Marvin Eugene should be deceased without issue and that Loren Murphy and Kathleen Murphy Cook should neither have any other living issue at said time, then said real estate shall be vested in the Maple Grove Cemetery, Brookville, Indiana. During the lifetime of the said Ululah Cranor Addison, Clarence Murphy, Loren Murphy and Kathleen Murphy Cook, my executor hereinafter named shall have the power and right to rent said farm and real estate and divide the proceeds equally among said four or any of the survivors, and I direct that the said Ululah Cranor Addison shall have a home on said real estate as long as she shall live. Neither of said four shall have the right or power to mortgate or sell their rights in said real estate."

It is appellants' position that William R. Osburn did not by his will exercise the power of appointment given him by his father's will, and that upon his death the fee simple title to the real estate which had been owned by his father became absolute in the descendents of the heirs at law of George R. Osburn who were alive at the time of the death of William R. Osburn.

Appellees' position is that Item 6 of William R. Osburn's will does indicate an intention to exercise the power of appointment given him in his father's will, and that if it does not, then George R. Osburn died intestate as to the interest in real estate not disposed of, and that such interest went to his sole heir at law determined as to the time of his death, that is, his son, William R. Osburn, and hence passed under the will of William R. Osburn.

In construing and interpreting a will, the governing factor is the intention of the testator as expressed and shown by the language used, so long as it does not interfere with established rules of law. Effect is to be given to the manifest intent of the testator as deduced from the language used, read in the light of the circumstances surrounding the testator at the time of its execution.

Judge Kelley, speaking for this court in the case of *Trust of Paszotta* v. *Calumet Nat. Bk.* (1961), 131 Ind. App. 604, 172 N. E. 2d 904, said:

"It is a long established legal principle in this state that in construing a will the governing factor is the intention of the testator as expressed and shown by the language thereof, and the primary purpose of such construction is to ascertain and give effect to such intention, so long as the same may not interfere with the established rules of law. In *Hutchinson's Estate et al.* v. *Arnt, Administratrix et al.* (1936), 210 Ind. 509, on page 518, 1 N. E. 2d 585, p. 588, the rule is expressed in this wise:

" 'But the purpose in construing a will is to ascertain and give effect to the intention of the testator, so long as the same may not interfere with the established rules of law. This purpose is to be ascertained upon a consideration of the will in its entirety, and words and expressions in the will are to be liberally construed and interpreted to this end. . . . The object is to discover the testator's intention from all the language of the will. The meaning which the testator intended to convey, by the use of particular words and expressions, will be determined from their relationship to other words and expressions used, and, when his intention is discovered, it will be enforced, notwithstanding that a meaning broader or narrower than is usual be given to particular words and phrases.'

"See, also, *Curry et al.* v. *Curry et al.* (1914), 58 Ind. App. 567, 576, 105 N. E. 951. 'The intent of the testator is recognized by all the authorities as being the polar star to which the courts must always look in construing a will'; *Reeder et al.* v. *Antrim* (1915), 64 Ind. App. 83, 91, 110 N. E. 568; *Mundhenk* v. *Bierie et al.* (1922), 81 Ind. App. 85, 89, 135 N. E. 493. Effect must be given to the manifest intent of the testator as deduced from the language of the will 'read *in the light of the circumstances surrounding him (the testator) at the time of its execution.*' (Emphasis and bracketed words supplied), *Billings* v. *Deputy et al.* (1925), 85 Ind. App. 248, 252, 146 N. E. 219; *Beck et al.* v. *Dickinson, Executor* (1934), 99 Ind. App. 463, 467, 468, 192 N. E. 899."

In 29 I. L. E., Wills, §§173, 175, pp. 321-323, 326, it is stated:

"In the construction and interpretation of a will the intention of the testator is to be ascertained. The cardinal or paramount rule in the construction of a will is to ascertain the intention of the testator and give it effect as long as it is not prohibited by law. Accordingly, in construing a will the primary object or purpose is to ascertain and give effect to the intention of the testator if it does not violate some positive rule of law.

"In other words, the intention of the testator, unless violative of some settled rule of law or public policy, must govern or prevail, and must be given effect. In accordance with this rule, technical rules of construction must give way to the intention of the testator.

"In the construction of a will, the general intent of the testator will be carried into effect at the expense of any particular intent, provided such general intent is consistent with the rules of law.
"  . . .

"The court, in construing a will, should, as far as possible, assume the standpoint of the testator and place itself in the testator's position at the time of the execution of the will.

"In addition to considering the language and provisions of the will, the court will, when necessary in order to ascertain the testator's intention, consider circumstances and conditions surrounding the testator when the will was executed, and if the language or terms of a will are ambiguous, the testator's intention may be arrived at by considering the circumstances under which the will was executed. So, where the testator's intention is obscure, circumstances and conditions surrounding the testator at the time the will was made, his manner of living, and relationship of the parties involved, may be looked to as aid in construction. However, effect may not be given to an intention proved by surrounding circumstances without regard to the will, since the right to dispose of property by will is limited by the statutory requirement that it must be in writing.

"The Probate Code expressly provides that, in the absence of an intent to the contrary appearing in the will, if a testator devises real or personal property on such terms that his intention with respect to such devise can be determined at his death only by reference to a fact or an event independent of the will, such devise shall be valid and effective if the testator's intention can be clearly ascertained by taking into consideration such fact or event even though occurring after the execution of the will." See also authorities therein cited.

The trial court found that William R. Osburn occupied and lived on the real estate of his father from the date of the death of his father until his death, and further found:

"9. That William R. Osburn had no widow or natural child him surviving, but did leave two foster children, Ulalah Cranor Addison and Clarence Murphy, who were taken into the household of William R. Osburn, being the real estate formerly owned by George R. Osburn, and were raised from childhood to adulthood in said home by said William R. Osburn.

"10. That Ulalah Cranor Addison and Clarence

Murphy, together with Loren Murphy and Kathleen Murphy Cook, children of Clarence Murphy, were treated by said William R. Osburn as if they had been his natural children and grandchildren; that they were so referred to by specific mention in the Will of William R. Osburn, and were the natural objects of bounty of said William R. Osburn.

"11. That the Plaintiffs herein belong to a class of distant and collateral heirs of George R. Osburn and were not the natural objects of his bounty.

" . . .

"14. That William R. Osburn, following the death of George R. Osburn, purchased additional real estate contiguous to the real estate devised by the Will of George R. Osburn; that the real estate purchased by William R. Osburn and owned by him at the time of his death, was of nominal value; was not subject to the production of any earnings or income; had no improvements or buildings thereon, and was inaccessable except through the real estate derived from George R. Osburn.

"15. That William R. Osburn purchased no real estate susceptible to producing income and providing earnings to support the trusts to his named devisees and without the real estate which was devised to him by his father, George R. Osburn, and of which William R. Osburn was given the power of appointment by the Will of George R. Osburn, then the trust provisions of Item 6 would be inoperative."

Our Supreme Court stated in *Bullerdick* v. *Wright* (1897), 148 Ind. 477, 483, 47 N. E. 931:

"The guiding rule prescribed by the authorities, from Blackstone down to the present time, for the interpretation of wills, is, that the intention of the testator as the same is disclosed by the entire will must prevail, when such intention is not inconsistent with the settled rules of law. Where a testator has been vested with the power of disposition over property, the authorities give three classes of cases as affording sufficient proof of

the intent of the testator to execute such power. *First,* where he refers to, or recites the power in his will; *second,* where the property or thing or fund subject to be disposed of under the power is described; *third,* where the will would be inoperative without acting on the property over which the testator is given the power of appointment. While these illustrations do not afford the only proof, they are, however, considered as furnishing clear and unequivocal proof of the intention of the testator to exercise the power. . . . "

It is further stated in *Crawfordsville Tr. Co.* v. *Elston Bank & Tr. Co.* (1940), 216 Ind. 596, 622, 25 N. E. 2d 626:

"It is well settled that the instrument executing the power need not specifically refer to the power provided the instrument shows an intent to execute such power. The intent need not be shown in any particular way, but is to be determined by a construction of the whole instrument, with reference to the circumstances under which it was executed." *Bullerdick* v. *Wright* (1897), 148 Ind. 477, 47 N. E. 931; *South* v. *South* (1883), 91 Ind. 221.

Examining the will of William R. Osburn, and the circumstances surrounding him at the time it was executed, we conclude, as did the trial court, that it was the intention of the testator to devise all of the real property of which he was given a power of disposition to the devisees named in Item 6 of his will. While the will makes no specific reference to the power, it refers to the real estate as being a "farm," and provides that Ululah Cranor Addison shall have a home on said real estate as long as she shall live. The property which William R. Osburn acquired by purchase after the death of his father, George R. Osburn, had no buildings thereon. Further provision is made for the renting of the farm and the

division of the proceeds, and this provision would be inoperative if it applied only to the said real estate acquired by purchase and which was not susceptible of producing income or earnings.

Assuming that there was no exercise of the power of appointment by William, still appellants could not prevail. It is stated in 41 Am. Jur., Powers, §91, pp. 869-870:

> "Where, upon failure to exercise a power of appointment given by will, the property subject to the power devolves upon the heirs or next of kin of the testator, a question is sometimes raised as to whether such heirs or next of kin are to be ascertained as of the time of the testator's death or as of some other time. This question usually arises only in cases of default in the exercise of general powers, since in cases of limited powers a general intention to benefit particular persons, or those who fall within a particular description, is usually inferred, but it may arise in the case of a failure to exercise a limited power in any instance where the will is not construed as vesting the property in the persons among whom it might have been appointed. According to the rule usually applied, upon a failure to exercise a power of appointment given by will, the property subject to the power devolves by mere operation of law upon those who answer the description of such heirs or next of kin as of the time of the testator's death. . . . " See also annotation, 92 A. L. R. 364. A similar statement is contained in 96 C. J. S., Wills, §1072, pp. 738-739:

> "It is a general rule that, except as otherwise provided by statute, where a testamentary power, other than an imperative power, is not exercised by the donee, the property over which the power was given stands as if the power had never been created or conferred; and such property accordingly passes under the donor's will, to such persons, if any, as are designated, either expressly or by implication, to take it in case of default in exercise, or, if none is so designated, or if the per-

sons designated never come into existence, or the gift otherwise lapses, to the residuary devisees and legatees of the donor, except where the power was conferred by the residuary clause, or where the will contains no residuary clause, in which case the property passes, as intestate property, to the heirs or next of kin of the donor, ascertained as of the date of the donor's death. Even though the persons who take the property, under the foregoing rules, are also the heirs or next of kin of the donee of the power, they take the property under the donor's will, or from his estate, and not from the donee."

Indiana follows the general rule above stated in that the property passes as intestate property to the heirs of the donor ascertained as of the date of the donor's death. Thus, in *Johnson* v. *Snyder* (1924), 82 Ind. App. 215, 142 N. E. 877, a testator, by Item II of his will, gave his widow all his property for life, and at her death there was to be paid from the remainder certain money legacies, and the residue of the remainder was to be distributed as the widow should direct by will. By Item III of the will the widow could convert property to cash, and if she did so the remainder interest was to be distributed as designated in Item II. Testator left no children, and no father or mother, but left his widow, brothers and sisters, and descendants of brothers and sisters. The widow failed to exercise the power given her to dispose of the remainder of the estate after her life estate, either by deed or will. The question presented was whether the brothers and sisters of testator and their descendents should take the remainder of testator's property after the life estate of the widow, or whether the residuary legatee of the widow should take the same. This court said:

" . . . The widow having failed to exercise the power given her to dispose of the remainder of

the estate after her life estate, either by deed or by will, the same was wholly undisposed of,—it was an intestate estate. There being no child and no father or mother surviving, the widow took the whole of the property of which her husband died intestate as his heir. This has been the law since the decision of the Supreme Court in *Armstrong* v. *Berreman* (1859), 13 Ind. 422."

This court further held that upon the death of the widow such property passed under the residuary clause of her will. See also *Lindsay et al.* v. *Lindsay et al.* (1874), 47 Ind. 283; *Waugh et al.* v. *Riley et al.* (1879), 68 Ind. 482; and *Armstrong* v. *Berreman* (1859), 13 Ind. 422.

The decision of the trial court was not contrary to law, and the court did not err in its conclusions of law.

Judgment affirmed.

Hunter and Kelley, JJ., concur; Mote, C. J., concurs in result.

NOTE.—Reported in 193 N. E. 2d 669.