John F. WHITE, Administrator D.B.N., C.T.A., of the Estate of Theodore N. Townsend, Deceased, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 81–2043.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1982.

Decided June 14, 1982.

Frank P. Cihlar, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Douglass R. Shortridge, Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and DOYLE, Senior District Judge.[*]

BAUER, Circuit Judge.

This tax refund suit concerns the federal estate tax consequences of decedent Theo-

---

* The Honorable James E. Doyle, Senior Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

dore N. Townsend's failure to mention his general power of appointment over certain trust assets in his will. The district court granted summary judgment in favor of decedent's estate, concluding that the Internal Revenue Service (IRS) erroneously included the trust-assets' value in Townsend's estate. *White v. United States,* 511 F.Supp. 570 (S.D.Ind.1981). The United States now appeals. We affirm.

## I

Settlor-donor Charlotte K. Townsend, a resident of Le Roy, New York, established several testamentary trusts upon her death in 1931. Item Seventh[1] of her will gave her son, decedent-donee Theodore N. Townsend, a life income interest in one of the trusts and a general power of appointment[2] over any interest remaining in that trust upon his death. In the event decedent failed to exercise his unrestricted appointment power, Item Seventh provided that the trust property would pass to decedent's issue. Item Seventh was silent, however, as to whether the law of the donor's or that of the donee's domicile would govern if a dispute arose over whether the donee had exercised his appointment power.

On November 9, 1973, decedent died testate in Indianapolis, Indiana, his residence and domicile since 1946. Decedent's will, which was admitted to probate in Marion County, Indiana, specifically bequeathed $45,000 to several educational institutions. A general residuary clause then divided the remainder of decedent's estate equally among his three children. The will mentioned neither decedent's life income interest in the 1931 trust fund nor his appointment power.

As part of his duties as executor of decedent's estate, George S. Olive, Jr., filed a federal estate tax return reflecting decedent's interests in the other testamentary trusts created by Charlotte K. Townsend in 1931. As to the trust over which decedent held the appointment power, Olive included the following notation in Schedule H of Form 706:

*Powers Created Prior to October 21, 1942, but Not Included in Gross Estate*: Securities held by the Marine Midland Bank-Western, Buffalo, New York, in a trust created by Charlotte K. Townsend, under Item 7th of her Will, subject to general power of appointment, are not included in decedent's gross estate under the provisions of Sec. 2041, I.R.C., because decedent never exercised power. (Copy of C.K. Townsend Will follows Sch. F)

At the time decedent died the trust assets subject to his appointment power were valued at $352,760.64.

An IRS agent auditing the estate's tax return considered decedent's power exercised and therefore included the trust-assets' value in decedent's estate. The agent relied on New York law, under which a testate decedent is presumed to have exercised his general power absent clear proof to the contrary. Olive objected to this decision, but the IRS rejected his timely protest. As a result, Olive paid the asserted $99,727.39 estate tax deficiency and $12,489.13 additional interest with funds advanced by Midland Marine Bank-Western of Buffalo, New York (Midland). Midland, the original and continuous trustee of the 1931 trust fund subject to decedent's power, deducted the sum advanced for the estate tax and then paid the balance of the trust proceeds to decedent's three children. Thereafter the Marion County probate proceedings were closed, with the exception of John F. White's appointment as successor administrator for the purpose of filing a tax

---

1. The text of Item Seventh appears in the district court's opinion. *White v. United States,* 511 F.Supp. 570, 572 (S.D.Ind.1981).

2. A general power of appointment grants the donee full dominion over the designated property as if he owned it, thereby permitting him to pass ownership of the property to anyone he appoints, including his own estate or creditors.

In contrast, under a special power of appointment the donee's power to appoint is limited to a specific class of persons other than the donee. *See Morgan v. Commissioner,* 309 U.S. 78, 81, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940), *aff'g* 103 F.2d 636 (7th Cir. 1939); Bolich, *The Power of Appointment: Tool of Estate Planning and Drafting,* 1964 Duke L.J. 32, 37.

refund claim. The claim was disallowed and White filed this suit.

After considering the parties' cross-motions for summary judgment, the district court decided that the $352,760.64 should not have been included in decedent's gross estate and that a refund was therefore due. This appeal followed.

## II

Under section 2041(a)(1) of the Internal Revenue Code of 1954,[3] appointive trust[4] assets are included in a decedent's estate only if the decedent exercised his general appointment power over them. In cases such as this one, where a decedent disposes of all his property through a residuary clause but fails to mention his general power, a question arises as to whether the residuary clause operates as an exercise of the power. New York law presumes that a testate decedent has exercised his power unless a different testamentary intent appears expressly or by necessary implication. N.Y.Est., Powers & Trusts Law (McKinney)

§ 10–6.1(a)(4).[5] Indiana law creates the opposite presumption by deeming a power unexercised absent some specific testamentary indication that the decedent intended to exercise his power. Ind.Code Ann. § 29–1–6–1(f) (Burns).[6]

The parties agree that decedent's silence as to his intent raises a question of law, but divide over which state's law should govern. The government contends that New York law controls because the trust was created, located, and administered in New York. Proper application of New York's presumption, the government asserts, requires judgment in favor of the United States. Decedent's estate representative, however, argues that Indiana law governs and dictates a refund to the estate or, in the alternative, that correct analysis under New York law mandates recovery for the estate.

The district court, sitting in Indiana, looked to Indiana choice-of-law rules to resolve this conflict. *See Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941);

---

**3.** 26 U.S.C. § 2041(a)(1) (1976) provides:

Sec. 2041. Powers of appointment.

    (a) *In general.*—The value of the gross estate shall include the value of all property—

    (1) *Powers of appointment created on or before October 21, 1942.*—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

    (A) by will, or

    (B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive;

but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—

    (i) such partial release occurred before November 1, 1951, or

    (ii) the donee of such power was under a legal disability to release such power on October 21, 1942, and such partial release occurred not later than 6 months after the termination of such legal disability.

**4.** Section 2041(a)(1) pertains only to trusts created on or before October 21, 1942. Because it was created in 1931, the trust subject to decedent's power falls within the ambit of section 2041(a)(1).

**5.** New York Estates, Powers & Trusts Law (McKinney), provides:

    § 10–6.1 *Exercise of a power of appointment; manifestation of intention of donee.*

    (a) Subject to paragraph (b), an effective exercise of a power of appointment does not require an express reference to such power. A power is effectively exercised if the donee manifests his intention to exercise it. Such a manifestation exists when the donee:

       \*    \*    \*    \*    \*    \*

    (4) Leaves a will disposing of all of his property or all of his property of the kind covered by the power, unless the intention that the will is not to operate as an execution of the power appears expressly or by necessary implication.

**6.** Section 29–1–6–1(f) provides:

    (f) A will shall not operate as the exercise of a power of appointment which the testator may have with respect to any real or personal estate, unless by its terms said will specifically indicates that the testator intended to exercise said power.

*First National Bank of Chicago v. Ettlinger*, 465 F.2d 343, 346 (7th Cir. 1972). Although Indiana decisions address certain areas involving conflicts of laws, see, e.g., *W. H. Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417 (1945) (contract action); *Suyemasa v. Myers*, 420 N.E.2d 1334 (Ind.Ct. App.1981) (same); *Clow Corp. v. Ross Township School Corp.*, 384 N.E.2d 1077 (Ind.Ct.App.1979) (same),[7] no Indiana choice-of-law rule covers power-of-appointment questions. The district court therefore properly recognized its duty to decide what position the Indiana Supreme Court would take if confronted with this problem. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). We agree with the district court that Indiana's highest court would adopt the more sensible rule that the law of the donee's domicile governs issues concerning the donee's intention to exercise a power of appointment by will.

The donee's unrestricted appointment power gives him complete control over the trust-assets' disposition. As a practical matter, then, property subject to the donee's general power belongs not to the donor, as the traditional rule suggests, but to the donee, at least for appointment purposes. The donee, as the only person able to alter the designation of beneficiaries, thus becomes the key figure and his intent the central issue. Consequently, a court called upon to decide whether a donee effectively exercised a power by will, when his will's residuary clause disposed of all his property without mentioning the power, must attempt to discern the donee's intent. *See, e.g., Radford v. Fidelity & Columbia Trust Co.*, 185 Ky. 453, 458–59, 215 S.W. 285, 288 (1919); Restatement (Second) of

Conflict of Laws § 275, Comment c (1971); H. Goodrich, Handbook of the Conflict of Laws § 177 (4th ed. E. Scoles 1964); R. Leflar, American Conflicts Law § 200 (3d ed. 1977); 5 A. Scott, The Law of Trusts § 642 (3d ed. 1967).

Given the realities of this situation, it seems logical to focus on the donee's express, implied, or constructive intent to exercise his power as determined by the rules of his state. The language of the donee's will is his own and should be construed according to the laws under which his will was drafted and with which he was presumably most familiar, those of his own domicile. *See* R. Leflar, American Conflicts Law § 200 (3d ed. 1977). Furthermore, the decision to exercise a general power lies solely within the donee's unfettered discretion, which probably is influenced by local rules, customs, and decisions. Accordingly, the law of the donee's domicile should control; it is his will that is being construed. *See* 5 A. Scott, The Law of Trusts § 642 (3d ed. 1967).

Although our assessment of the donor-donee relationship differs from the traditional view, the nature of this case justifies our departure. In all tax controversies courts consider substance over form. Thus, from a taxation standpoint the power to dispose of property at death has long been considered the equivalent of ownership, see *Graves v. Schmidlapp*, 315 U.S. 657, 660, 62 S.Ct. 870, 873, 86 L.Ed. 1097 (1942), *overruling Wachovia Bank & Trust Co. v. Doughton*, 272 U.S. 567, 47 S.Ct. 202, 71 L.Ed. 413 (1926); *Whitney v. State Tax Commission of New York*, 309 U.S. 530, 538, 60 S.Ct. 635, 638, 84 L.Ed. 909 (1940); *Wachovia Bank & Trust Co. v. Doughton*, 272 U.S. 567, 576, 47 S.Ct. 202, 204, 71 L.Ed. 413 (1926) (Holmes, J.,

---

**7.** Confusion exists as to whether Indiana follows the "significant contacts" or "*lex loci delicti*" rule in tort actions raising conflicts issues. *Compare Motteler v. J.A. Jones Construction Co.*, 457 F.2d 917 (7th Cir.), cert. denied, 409 U.S. 813, 93 S.Ct. 66, 34 L.Ed.2d 70 (1972) (Indiana follows the significant contacts rule); *Gianni v. Fort Wayne Air Service, Inc.*, 342 F.2d 621 (7th Cir. 1965) (same); *and Watts v. Pioneer Corn Co.*, 342 F.2d 617 (7th Cir. 1965) (same), *with Witherspoon v. Salm*, 251

Ind. 575, 243 N.E.2d 876 (1969) (disclaiming Indiana Court of Appeals' adoption of the significant contacts test but reversing on other grounds), *and Maroon v. State Dept. of Mental Health*, 411 N.E.2d 404 (Ind.Ct.App.1980) (applying *lex loci delicti* rule). Recent decisions of this Court reflect our uncertainty about Indiana's multistate tort rule. *See, e.g., Sharp v. Egler*, 658 F.2d 480 (7th Cir. 1981); *Bowen v. United States*, 570 F.2d 1311 (7th Cir. 1978).

joined by Brandeis and Stone, JJ., dissenting); *Bullen v. Wisconsin*, 240 U.S. 625, 631, 36 S.Ct. 473, 474, 60 L.Ed. 830 (1916), irrespective of technical legal ownership. Because a donee upon exercising his general power becomes the appointive property's *de facto* owner for tax purposes, his constructive testamentary intent to exercise his appointment power should arise from the laws of his domicile rather than those of the donor's.

Our holding that the donee's will should be approached from the donee's perspective, and hence interpreted in light of his domicile's laws, derives additional force from the circumstances of this case. By the terms of Charlotte Townsend's will, the trust proceeds subject to her donee-son's power automatically passed to the natural objects of her son's bounty, his children, unless he affirmatively exercised his appointment power to the contrary. Assuming the decedent-donee intended to benefit his children,[8] two options were available to him. On the one hand, by mere silence decedent could have allowed his power to lapse, which would have both transferred the trust proceeds to his children and increased the amount transferred, since an unexercised pre-1942 general power generates no federal estate tax liability under section 2041(a)(1). On the other hand, decedent could have passed the trust assets to his children by exercising his appointment power in their favor, thereby incurring tax liability under section 2041(a)(1) and diminishing his children's inheritance.

Applying our rule to these facts, decedent acted rationally by choosing the simplest, most obvious, and most beneficial route open to him under the law of his jurisdiction: nonexercise of his power. We think the Indiana Supreme Court would embrace our view, which encourages the donee, as the only person vested with decision-making authority over the general power's exercise, to select his most beneficial and thus most reasonable alternative. To hold otherwise,

the Indiana Supreme Court would have to presume that the donee intended to reduce his children's inheritance or that he and his lawyer were ignorant of the legal effect of his will. We are reluctant to create such unreasonable presumptions on behalf of Indiana's highest court.

We recognize the special need for certainty and consistency in laws affecting trusts, *see Beals v. State Street Bank & Trust Co.*, 367 Mass. 318, 324, 326 N.E.2d 896, 899–900 (1975), but fail to see how that end is promoted by perpetuation of a legal fiction that confuses lawyers and laymen alike. This is the impact of the traditional rule, which first views the donor of a general power as the appointive property's owner and then treats the donee as the donor's mere agent, even though the donee's appointment decisions are wholly beyond the donor's control. Construing a decedent-donee's will and his exercise of any power therein according to the law of his domicile, where it was written and intended to be probated and administered, fosters certainty and consistency. Thus, in our opinion both policy and logic favor applying the law of the donee's domicile.

We are not alone in criticizing the traditional donor-ownership/donor's domicile theory. Dissenting in *In re Bauer's Trust*, 14 N.Y.2d 272, 278, 200 N.E.2d 207, 210, 251 N.Y.S.2d 23, 26 (1964), Judge Fuld strongly attacked the donor-owner/donee-agent principle as applied to general powers because he viewed unrestricted appointment authority as equivalent to ownership, just as we do. Similarly, the Massachusetts Supreme Judicial Court, which decided the leading case favoring the traditional rule, *Sewall v. Wilmer*, 132 Mass. 131 (1882), recently admitted that "[t]here are strong, logical reasons for turning to the law of the donee's domicile at the time of death to determine whether a donee's will has exercised a testamentary power of appointment over movables." *Beals v. State Street Bank & Trust Co.*, 367 Mass. 318, 322, 326 N.E.2d

---

**8.** This assumption is based on decedent's designation of his children in his will's residuary clause.

896, 899 (1975). The *Beals* court, however, refused to abandon the traditional rule because of such precedential concerns as consistency and certainty. *Id.* at 324, 326 N.E.2d at 899–900. As we have pointed out, those concerns are not present here because there are no controlling Indiana Supreme Court decisions on this issue.

The government contends that Indiana follows the traditional view, citing a number of Indiana Court of Appeals cases applying the donor-ownership concept. *See, e.g., Irwin Union Bank & Trust Co. v. Long,* 160 Ind.App. 509, 312 N.E.2d 908 (1974); *Osborn v. Murphy,* 135 Ind.App. 291, 193 N.E.2d 669 (1963); *Osborn v. Osborn,* 124 Ind.App. 295, 116 N.E.2d 653 (1954) (en banc); *Johnson v. Snyder,* 82 Ind.App. 215, 142 N.E. 877 (1924). These cases neither examine the impact of choice-of-law considerations on the traditional rule nor bind the Indiana Supreme Court. We seriously doubt whether Indiana's highest court would feel compelled to follow them, and we therefore decline to do so ourselves. As Justice Stevens observed while a member of this Court, intermediate appellate court decisions "may be disregarded if we are 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 607 (7th Cir. 1975), *quoting West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).[9]

The government's reliance on our decision in *First National Bank of Chicago v. Ettlinger,* 465 F.2d 343 (7th Cir. 1972), is also misplaced. Unlike this case, in *Ettlinger* the parties agreed that the traditional donor's-domicile rule was normally followed by the highest court of Illinois, the state in which the district court was sitting. In light of the Illinois Supreme Court's posi-

tion in *In re Breault's Estate,* 29 Ill.2d 165, 174, 193 N.E.2d 824, 829 (1963), our dicta in *Ettlinger* simply suggested that we adhered to Illinois' general rule, not that we approved it. 465 F.2d 346 n.2. Because no Indiana Supreme Court case binds us here, we need not follow the traditional doctrine.

Indeed, contrary to the government's position, *Ettlinger* supports our holding in this case. Although we were influenced in *Ettlinger* by such practical considerations as the appointive property's New York location and the donee's long-time New York residency, of primary significance was the donee's testamentary specification that New York law should govern his will. 465 F.2d at 348. In fact, because Illinois law mandated we do so, our analysis in *Ettlinger* dwelled almost exclusively on factors suggesting or negating the donee's intention to exercise his general power of appointment. *Id.* at 346–52; R. Leflar, American Conflicts Law § 200 (3d ed. 1977). As in *Ettlinger,* our approach here emphasizes factors relating to the donee because he ultimately controls the power. We think Indiana's highest court would also focus on the donee's control and intent, but through the more direct route of the donee's-domicile rule.

Quite apart from our view of the merits, we affirm on the basis of the district court's greater familiarity with Indiana law. The Supreme Court has often noted its deference to the Circuit Courts of Appeals' greater skill in matters of local law, except in situations where the federal appellate courts' conclusions were unreasonable. *See, e.g., Commissioner v. Estate of Bosch,* 387 U.S. 456, 462, 87 S.Ct. 1776, 1781, 18 L.Ed.2d 886 (1967); *United States v. Durham Lumber Co.,* 363 U.S. 522, 526–27, 80 S.Ct. 1282, 1284, 4 L.Ed.2d 1371 (1960); *Propper v.*

---

**9.** Professor Corbin's observations apply with special force here:

> When the rights of a litigant are dependent on the law of a particular state, the court of the forum must do its best (not its worst) to determine what that law is. It must use its judicial brains, not a pair of scissors and a paste pot. Our judicial process is not mere syllogistic deduction, except at its worst. At

its best, it is the wise and experienced use of many sources in combination—statutes, judicial opinions, treatises, prevailing mores, custom, business practices; it is history and economics and sociology, and logic, both inductive and deductive.

Corbin, *The Laws of the Several States,* 50 Yale L.J. 762, 775 (1941).

*Clark,* 337 U.S. 472, 486–87, 69 S.Ct. 1333, 1341–42, 93 L.Ed. 1480 (1949). Several circuits have expressed similar regard for district courts' determinations of unsettled state law, as evidenced by those circuits' "clearly erroneous" and "clearly wrong" appellate review standards. *See, e.g., Owyhee Grazing Association, Inc. v. Field,* 637 F.2d 694, 697 (9th Cir. 1981); *Harris v. Hercules, Inc.,* 455 F.2d 267, 269 (8th Cir. 1972); *American Mutual Insurance Co. v. Romero,* 428 F.2d 870, 874 (10th Cir. 1970); *Lomartira v. American Automobile Insurance Co.,* 371 F.2d 550, 554 (2d Cir. 1967). Our somewhat stricter standard was set forth in *Buehler Corp. v. Home Insurance Co.,* 495 F.2d 1211 (7th Cir. 1974):

> Where no controlling state precedent can be found appellate courts give great weight to the view of the state law taken by a district judge experienced in the law of that state, although the parties are entitled to a review of the trial court's determination of state law just as they are of any other legal question in a case.

*Id.* at 1214, *citing Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 204, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956); *C.H. Leavell & Co. v. Board of Commissioners,* 424 F.2d 764, 766 (5th Cir. 1970); C. Wright, Handbook of the Law of Federal Courts § 58 (3d ed. 1976).

As should be apparent from our preceding discussion, we have carefully reviewed the trial court's analysis of Indiana law. Because this is a close and difficult question, we must give great weight to Chief Judge Steckler's decision, particularly in light of his more than thirty years on the federal bench in Indiana.

### III

Since Indiana law is dispositive, we need not consider whether the trial court correctly applied New York law. For the reasons expressed in this opinion, the district court is

Affirmed.