### Cornelia Foster et al. v. Charles F. Grey et al.

1. WILLS—*Construction of—The Intention of the Testator to Govern.*—The purpose to be attained by the construction of a will is to ascertain the intention of the testator.

2. SAME—*Rules for Ascertaining the Intention of the Donee of a Power.*—The weight of English authority is that there can be no execution of a power by a testator, unless in the will one of three things appear : (1) a reference to the power (2) or to the subject or property covered by the power, (3) or where the instrument would be inoperative without the aid of the power. These three things concurring, or any one of them existing, demonstrates to an absolute moral certainty that there was an intention by the donee of the power to execute it.

3. GIFTS—*When Manifesting an Intention by a Donee to Execute a Power.*—A gift of that which a testator can not dispose of, except in the execution of a power, necessarily manifests an intention to execute that power.

**Bill for the Construction of a Will.**—Error to the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed June 28, 1901.

HENRY T. HELM and EVERETT A. ABORN, attorneys for plaintiffs in error.

CARLOS J. WARD, attorney for the Chicago Baptist Hospital.

WILSON & ZOOK, attorneys for Charles F. Grey, Harvey B. Hurd and Christian C. Kohlsaat, executors, etc., defendants in error.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

This was a bill in chancery filed by Charles F. Grey, as executor of the last will of Maria M. Foster, praying for a construction of said will, and for directions as to the distribution of the testatrix' estate thereunder. The husband of Maria M. Foster, Ambrose Foster, died in 1891, leaving a last will, the third and fourth clauses of which were as follows:

" Third. I give, bequeath and devise to my beloved wife, Maria M. Foster, all of the rents, income, increase and profits of my estate, both real and personal, during her life.

Fourth. I give, bequeath and devise to my said wife all of my estate, both real and personal, that I may own, or be entitled to at the time of my death, except the sum of twenty thousand dollars, to have and to hold during her life, and I hereby authorize her to control, mortgage, sell, convert, invest and re-invest the same in the same manner I might do if living, and I hereby authorize my wife further power to use, dispose of and appoint in such manner as she shall see fit, as well by her last will and testament as by any other mode, all of the reversion of my estate, both real and personal, except the said sum of twenty thousand dollars."

It is over the exercise by Mrs. Foster of the power of appointment conferred by said fourth clause that the controversy has arisen. There seems to be no question made but the power so conferred was ample; it is only, was it exercised by Mrs. Foster.

Since the decision in Funk v. Eggleston, 92 Ill. 315, we are not left in doubt as to what the rule is in Illinois in ascertaining whether the power of appointment in any given case has been executed by will, or not. It is there plainly held, following Lord Coke, in Scrope's case, 10 Co. 144, and Mr. Justice Story, in Blagge v. Miles, 1 Story, 427, that the intention of the donee of the power to execute the power, if unequivocally manifested, will be given effect

notwithstanding the earlier and narrower rules are not observed in the instrument. There does not seem, as we read that case, to have been any departure therein from the ancient rule that there should be a certain ascertainment of the intention of the donee of the power to act under the power, but only a broadening of the early rules, whereby the intention may be ascertained. As there said, the weight of English authority is that there could be no execution of a power by a testator, unless in the will one of three things appeared : (a) Reference to the power, (b) or to the subject or property covered by the power, (c) or where the instrument would be inoperative without the aid of the power. These three things occurring, or any one of them, demonstrated to an absolute moral certainty that there was an intention by the donee of the power to execute the power. See also Harvard College v. Balch, 171 Ill. 275.

The doctrine of to-day, in Illinois, that intention is the pole star of decision in this class of cases, can hardly be said to be a departure from that which existed formerly. It is only that the intention may be manifested, now, by the application of less narrow and technical rules than those that formerly governed the consideration of whether the intention exists or not.

The estate of Ambrose Foster consisted of both real and personal property. But there does not seem to have been given by his will any power to his executor to make conveyances of any of the real estate. Some of the real estate had been in his lifetime contracted by him to be sold, and some of it was disposed of after his death by sale or otherwise. To effectually transfer the title in all of these cases, Mrs. Foster in her individual capacity as the person in whom the legal title rested, made the conveyances, although Mr. Foster's executor received all moneys paid for the property.

The appellee, Mr. Grey, besides being the executor of Mrs. Foster's will was also the executor of Ambrose Foster's will, and he seems to have possessed the entire confidence of both persons. Ambrose Foster left personal estate in bonds, etc., of the value of about $45,000, and at the

time he died Mrs. Foster was possessed of personal property of her own in railroad stocks, etc., to the amount of about $17,000, entirely separate from anything owned by Mr. Foster. These securities of both persons seem to have been kept in a tin box, but entirely separate, in a safe depository. After the death of Mr. Foster his executor, Mr. Grey, and Mrs. Foster went together to the safe depository and took the securities from the box together. According to Mr. Grey's testimony, and it is not disputed at all, "it was there I received it (referring to the personal property of Ambrose Foster and of Mrs. Foster) with her, and that was the last she had to do with it. She took no special interest except to say to me 'manage it as you think best.'" It appears also that Mrs. Foster was a woman of very good common sense, but paid no special interest to her business affairs, and although she would occasionally consult with Mr. Grey and talk over matters with him, she took no part in the direction of the affairs of the estate. She kept a bank account in the bank of which Mr. Grey was president, and her method of receiving such of the income of Mr. Foster's estate as she was accustomed to, was for Mr. Grey to deposit to her credit from the funds in his possession as executor, such moneys from time to time as would supply her, after she had exhausted the income from her own property, without, however, as it seems, ever equaling the income arising from the estate of Ambrose Foster.

Coming now to the will of Maria M. Foster we find that she disposed of about $53,800 in specific money bequests, besides making a residuary disposition of "all the rest, residue and remainder of my estate." Except in the instances of a few articles of personal property specifically disposed of, no specific mention of either real or personal property is made in her will. Wherever reference is made to her property it is always as "my estate," except in the residuary clause of her will as we will mention later.

It is substantially conceded that Mrs. Foster's private estate, distinguished from anything received under her

husband's will, amounted to about $17,000, wholly in personalty. Her own separate estate would not, therefore, pay more than one-third of her specific money bequests. If there be added to her private estate that which came to her from her husband coupled with the power of appointment contained in his will, all the bequests, it is conceded, will be paid and a considerable sum will fall into the residuum. The making of a bequest that can only become effectual by the execution of a power certainly evidences an intention to execute the power. White v. Hicks, 33 N. Y. 383.

" A gift of that which a testator can not dispose, except in execution of a power, necessarily manifests an intention to execute that power." Quoted in Funk v. Eggleston, *supra*, from Sir John Leach in Hughes v. Turner, 3 Mylne & Keene, 666.

Adding to the circumstance that her gifts will be inoperative unless effect be given to an intention by Mrs. Foster to execute the power of appointment conferred upon her, the powers she gave to her executor by the residuary clause of her will, and we think the intention is clearly shown.

After nominating Mr. Grey to be executor of her will, she proceeds as follows :

" And I hereby give and confer upon the said Charles F. Grey, or his successor, full power and authority to manage and control my said estate, to invest and re-invest the funds thereof, to make, execute and deliver deeds of conveyance, mortgages, and other securities, and to take and receive mortgages or trust deeds in security for money loaned, and generally to do all things necessary and proper in his judgment in the management of the estate which may come to his hands under this my last will."

While it might be said that such powers apply as well to the estate she owned entirely independent of her husband's will except as such applies to real estate, it can not be said of such powers as have no application to anything but real estate. The authority to make conveyances, etc., surely refers to her real estate, and she had none except that which came to her through the will of her husband.

It seems from this clause to be conclusive that she recog-

nized the fact that she owned real estate, and by giving those powers, intended to dispose of it, and the inference to be drawn from her disposition of that, taken in connection with the other fact that she had in the former part of her will disposed of what she was powerless to do except by disposing of all that her husband had given her the right to do, leaves but little room for doubt as to her intention being to make a complete disposition of all the property left to her by Mr. Foster's will.

We do not deem it necessary to decide upon the competency, as evidence, of Mrs. Foster's statement to her lawyer, at the time he drew her will, that the larger part of her estate was received by her from her husband. It is, we think, plain enough from the other parts of the record that the power of appointment conferred upon Mrs. Foster by the will of her husband was intended to be executed by her, and was in fact validly so done by her.

Our conclusion, therefore, is that the decree of the Circuit Court should be affirmed and it is so ordered. Affirmed.