(No. 23460.— ▮▮▮▮▮▮▮)

FREDERICK A. RETTIG *et al.* Appellants, *vs.* EDWARD H. ZANDER, Exr., Appellee.

*Opinion filed June 10, 1936—Rehearing denied October 7, 1936.*

WHEELOCK, NEWEY & MACKENZIE, and JOHN M. BYRNE, for appellants.

LLOYD M. BROWN, and HUGH W. HOUSUM, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On February 7, 1929, Frederick A. Rettig, as trustee of the estate of August Zander, deceased, filed a bill in chancery in the superior court of Cook county to determine whether or not Helena Zander by her last will and testament had exercised a power of appointment given her by the will of August Zander. The bill prayed that the court construe the wills of Helena Zander and August Zander and determine whether the power of appointment had been exercised. The original defendants were Edward H. Zander and Susan Newbanks, as individuals and as executor and executrix of the last will and testament of Helena Zander, deceased. Susan Newbanks died. Her death was suggested, and Edward H. Zander was made a defendant as executor and sole beneficiary under her last will. Martha Rettig, who is a daughter of August Zander, and her two children, Frieda A. Rettig Stremlau and George Rettig, were also made defendants. They have joined with her remaining son, Frederick A. Rettig, in this appeal.

On March 4, 1891, August Zander, then a widower, entered into an ante-nuptial contract with Helena Zander, the terms of which need not be detailed. The parties were married, and on July 6, 1901, Zander made his will, by which he devised all his property, except certain legacies, in trust, to two trustees, who resigned and were succeeded by Frederick A. Rettig and Helena Zander. The trustees were directed by the will "to pay my widow Helena Zander

the sum of $150 per month as long as she remains my widow and my executors shall also expend between $6000 and $8000 for the purpose of erecting or purchasing a residence for my widow * * * which residence my widow shall occupy," etc. The will provided further that if Helena Zander re-married, payment of the $150 per month should cease and that "the residence purchased or erected for her shall revert to my estate; but if she remains my widow up to the time of her death, she may dispose of such residence, and a sum of money from my estate sufficiently large to aggregate, with the cost of such residence, $20,000, by her last will and testament as she may desire." Martha Rettig, a daughter, and her three children, are the remaining beneficiaries of the trust.

August Zander died on January 29, 1902. His will was admitted to record, and the executors and trustees named qualified. Pursuant to his will the trustees bought a 25-foot lot, herein referred to as lot 41, and Helena Zander with her own funds bought the north eight and one-third feet of lot 40, which adjoins lot 41 on the south. The two parcels were inclosed by a fence, were used as a single lot and were known as 2045 Seminary avenue. At the request of Helena Zander the trustees erected a two-flat building instead of a single residence. The main part of the building is on lot 41, but the eaves extend approximately two feet and the bay-window three or four inches over the south line of that lot. Helena Zander resided in one apartment and the trustees permitted her to collect and retain the rent from the other apartment. The trustees expended $7998.67 in erecting the building and purchasing lot 41.

Helena Zander died on May 10, 1928, without re-marrying. She made her last will and testament on May 11, 1927, which provided, in part, as follows:

"*Second*—After the payment of all such debts and funeral expenses, I give, devise and bequeath all the rest, resi-

due and remainder of my estate real, personal and mixed, which I now have, may die possessed of, or may be entitled to, to my beloved sister Mrs. Susan Newbanks."

The will of Helena Zander was admitted to record on July 18, 1929. Susan Newbanks went into and remained in possession of the premises until she died, on December 15, 1930. Since her death Edward H. Zander, as her executor and sole beneficiary, has had possession.

Answers were filed to the bill and a reference was made to the master in chancery, who filed an original and a supplemental report. The complainant's objections were overruled by the master and stood as exceptions. The chancellor entered a decree on November 22, 1935, ordering the surviving trustee, Frederick A. Rettig, to convey lot 41 to Edward H. Zander. The chancellor found that Helena Zander fully exercised the power of appointment given her by the will of August Zander, and that lot 41, and the balance of $12,001.33 in money, included in the power, passed to Susan Newbanks and by the terms of her will became vested in Edward H. Zander.

The court again referred the cause to the master to take evidence showing what money and property were in the hands of Frederick A. Rettig, as trustee, at the death of Helena Zander, the nature and character of that property, and as to his receipts and disbursements as such trustee since her death. The master was directed to make more specific findings of fact and law as to the power of appointment and as to the liability for interest on the $12,001.33, costs of suit and attorney's fees and to report the same to the court, together with the accounting by the trustee of the property and assets of the trust estate. This appeal followed, and the appellee, Edward H. Zander, has moved to dismiss it on the ground that the decree was not final but was interlocutory. The motion was taken with the case.

A decree is said to be final when it terminates the litigation between the parties on the merits and fully decides and

finally disposes of the rights of the parties to the cause. (*Smith* v. *Bunge,* 358 Ill. 229; *People* v. *Stony Island Savings Bank,* 355 id. 401; *Free* v. *Successful Merchant,* 342 id. 27.) A decree is final and appealable even though it does reserve incidental matters for consideration and directs a reference to a master to state an account. (*Eich* v. *Czervonko,* 330 Ill. 455; *People* v. *Village of Niles Center,* 306 id. 145.) If a decree provides that jurisdiction be retained for future determination of matters of substantial controversy between the parties it is not final. (*Smith* v. *Bunge, supra; People* v. *Stony Island Savings Bank, supra.*) The main question in this suit was whether or not Helena Zander exercised the power of appointment given her by the will of August Zander. The chancellor found that the power had been exercised and ordered a conveyance of the real estate. The fact that the decree did not fix a date of payment of the balance of $12,001.33 and that it reserved the question as to allowance of interest thereon and did not determine the amount of liability for solicitor's fees did not make it interlocutory. Although the interest, fees and costs may aggregate a considerable sum, these matters are incidental to the rights which the parties seek to have adjudicated. The motion to dismiss is therefore denied.

The appellants contend that Helena Zander did not exercise the power given her by the will of August Zander. They say the language of her will does not show affirmatively that she intended to exercise the power; that her will neither refers specifically to the power nor to the property covered by the power, and that her will need not be construed as an exercise of the power to be effective, since she had property of her own.

The appellee says that in a case where a will refers directly to the power or to the subject of the power, or where the will would be inoperative if it did not constitute an exercise of the power, it is demonstrated beyond a moral

certainty that the donee intended to exercise the power. However, he contends that the question is always one of intention, to be determined from the language of the will and the circumstances surrounding the testatrix at the time of its execution. He contends that the language of the will of Helena Zander, when read in the light of existing circumstances at the time of its making, shows that her intention was to exercise the power. We reviewed English and American authorities on this subject at length in *Funk* v. *Eggleston,* 92 Ill. 515. That decision has never been departed from in this State and it has been cited with approval by many other courts of last resort in passing upon the question as to whether a donee had exercised a power of appointment. In that case Sarah Funk was given a life estate and a power of appointment by the will of her husband, Absalom Funk. She died testate, and the question for decision was whether she had exercised the power given her by her husband's will. The clause of her will by which she was held to have exercised the power of appointment, was, so far as it is material, as follows: "all and singular the rest, residue and remainder of my estate, real and personal, of whatever kind and wheresoever situate." Before her death Sarah Funk purchased the undivided one-third interest devised and bequeathed by Absalom Funk to his illegitimate daughter. This gave her the fee in this undivided one-third of the land in question and by her husband's will she held a life estate in and a power of appointment of the remaining two-thirds. She also owned other real estate and personal property. We took into consideration her two interests in the land, namely, the one-third in fee and the life estate in the remaining two-thirds, in reaching the conclusion that by her reference in her will to "my estate, real and personal," she intended to, and did, exercise the power of appointment over the property of her husband. We also considered the fact that she had ordered her executors to make immediate

sale of her real estate, and that, in the absence of an appointment by her, the undivided two-thirds interest which was the subject of the power would have to be divided among two hundred and twenty-two heirs of her deceased husband. She bequeathed a watch to her husband's nephew and called it "my gold watch," and the household goods to her daughters and called them "my household goods." Evidence *dehors* the will showed that the watch and most of the household goods had been her husband's property. We held that these references to the personal property as being hers were additional evidence of the intention of the testatrix to exercise the power of appointment. At page 543 of that case we said: "The fact of co-existing undivided interests, one within and the other without the power, is but one element in the proof of intention, but a circumstance of great weight." And on page 545: "When the subject of the power is real estate, and the question is as to the execution of the power by the devise, it is the well settled doctrine, you may always look at the condition of the property and the facts *dehors* the will, to arrive at the intention of the testator." Again, at page 546, we said: "It is a question of intention. If it were only admitted that the rules by which that intention may be ascertained were not fixed and settled, then it cannot be doubted but that the evidence afforded by this will and this record establishes that intention beyond a reasonable doubt. If the intention is clear and manifest, it is all that is required by that which we have designated as the fundamental rule; to require more would be, as is suggested by Justice Story, to make 'the cases govern the general rule as to intention, and not the rule the cases.'" At page 547 we said: "We prefer then, to follow the broad and liberal rule announced by Lord Coke in *Scrope's case,* and by Mr. Justice Story in *Blagge* v. *Miles,* and that is based upon principle, and thus carry into effect the intention of the testatrix, rather than to defeat such intention by following the narrow and technical rule predi-

cated upon the cases. The provisions of the whole will taken together and the facts *dehors* the will clearly indicate, to our minds, an intention to pass the whole estate, and we think the devise should, in favor of the intention, be held to work both by the interest and by the power, and to pass the entirety."

The case of *Emery* v. *Emery*, 325 Ill. 212, is relied upon by the appellants in support of their contention. We pointed out in that case that there were no surrounding circumstances. The only evidence offered was the two wills, so that the situation there was entirely different from the case before us and from that in *Funk* v. *Eggleston, supra.* But in discussing the *Funk case* we said at page 222: "The rule requiring the existence of one of these three elements was said, however, to be altogether subordinate and secondary in its character and must give way if the circumstances indicated clearly the intention of the donee to work by the power, and the primary rule would prevail, which requires only that the intention be made clear and manifest."

The appellants rely, also, upon *Harvard College* v. *Balch,* 171 Ill. 275. In that case the donee's will was executed long before the donor's will was admitted to record and there was no proof that the donee knew that the power existed. The case is not out of harmony with *Funk* v. *Eggleston, supra,* for at page 283 we said: "There being no reference to the subject of the power or to the power itself, and the intention to execute it not appearing in any way, it did not operate as an exercise of the power—*Funk* v. *Eggleston,* 92 Ill. 515; 4 Kent's Com. 334; 1 Sugden on Powers, 356."

The testimony in the case here shows that Helena Zander knew that the power existed. She bought eight and one-third feet of ground adjoining lot 41 on the south, and at her request the trustees bought lot 41 and built a two-flat building instead of a single residence. She occupied one of the apartments for many years and had the rents

from the other apartment. The building projected over the north line of the eight and one-third-foot strip. The premises were enclosed by a fence and were treated as one piece of property. The sidewalk which extended from the front of the lot was laid on both lots. Helena Zander supported her sister for many years and held her in high esteem. Although the eight and one-third feet of ground would have some value if it were separated from the other lot and building, it is unreasonable, and highly improbable, that Helena Zander ever intended to devise this small strip of ground alone to her sister. This is the only real estate she owned in fee. The language of the will, read in the light of the circumstances shown, clearly demonstrates the intention of Helena Zander to exercise the power of appointment.

The appellants contend that the chancellor erred in admitting and considering evidence as to the circumstances mentioned above. Testimony as to the intention of a testator, separate and apart from that conveyed by the language of his will, is not admissible for the purpose of interpreting his will. (*Dahmer* v. *Wensler,* 350 Ill. 23, 29, 30; *Noble* v. *Fickes,* 230 id. 594.) While parol evidence is not properly admitted to show what the testator intended to write, it may be admitted where its effect is merely to explain or to make certain what the testator has written. In ascertaining a testator's intention the words of his will are to be read in the light of the circumstances under which he executed it, and the court may put itself in the place of the testator for the purpose of determining the objects of his bounty and the property which is the subject of disposition. (*Dahmer* v. *Wensler, supra; Moffet* v. *Cash,* 346 Ill. 287; *LaRocque* v. *Martin,* 344 id. 522; *Funk* v. *Eggleston, supra.*) The circumstances under which the will was written properly include the nature, extent and condition of the testator's property, the relations between

the testator and his family and his relations to the beneficiaries named in his will. (*Himmel* v. *Himmel*, 294 Ill. 557; *Walker* v. *Walker*, 283 id. 11; *Dahmer* v. *Wensler*, *supra*.) The testimony which was objected to was proper for the purposes we have named, and this contention must be overruled.

There was no abuse of discretion in the denial of leave to amend the bill to show that Helena and August Zander were first cousins.

The questions suggested by the appellee as to liability for interest, costs and attorney's fees are not before us, since they were referred to the master, and the chancellor reserved jurisdiction to pass upon them.

The decree of the trial court is right, and it is affirmed.

*Decree affirmed.*