John M. Keane, S.
This is a proceeding for the judicial settlement of the accounts of the surviving trustee of a trust created under the will of Silas D. Molyneaux for the benefit of his son, Silas D. Molyneaux, Jr. In addition, certain questions have been raised relating to a general power of appointment given the son by the will of his father.
Silas D. Molyneaux, hereinafter called the father, died October 14,1951. His will was admitted to probate by this court on October 19, 1951. His testamentary plan was simple. A trust of $100,000 was created for his wife, who was not the mother of his son, Silas D. Molyneaux, Jr. His medical library *161 was given to his associate. Ills home was devised to his son. The remainder of his estate was left in trust for the benefit of his son. The income was payable to the son during the duration of the trust. The will further provided that one third of the original corpus was to be paid to the son on the 5th anniversary of his father’s death; one third on the 10th anniversary, and the balance on the 15th anniversary. If the son did not live until 15 years after his father’s death, the unexpended corpus was payable to the person or persons appointed by the will of the son. There was no alternative disposition made in default of appointment.
No problem would have arisen had Silas D. Molyneaux, Jr., hereinafter called the son, lived until October 14, 1966, the 15th anniversary of his father’s death. Unfortunately, the son died, a young man, on June 17, 1963. His will was admitted to probate by this court on July 8,1963.
The son’s will made no specific reference to the general power of appointment given to him under the terms of his father’s will over the unexpended trust corpus. After devising his homo to his wife and bequeathing his tangible personal property to her, the balance of his substantial estate was left in trust for the benefit of his wife during her lifetime or until her remarriage. Upon her death or remarriage, 5% of the corpus was given to named charitable and educational organizations and 95% of the corpus was to be held in a further trust for the benefit of any child or children, with payment of one third of the corpus at age 25, one third at age 30, and the balance at age 35. If the beneficiary died before reaching age 35, the balance was payable to descendants of the beneficiary and if there were none, the balance was payable to the estate of the beneficiary. The son left him surviving as his only child, one daughter, Mary Sara Molyneaux, who was eight years old at the date of his death.
In addition, two conditions were superimposed on any trust for the benefit of any child. By paragraph “ uixth ”, a maximum of $6,000 was to be withdrawn from a trust for the benefit of a child if said child had not attended for at least two academic years a college or other accredited school by the time the 30th birthday was reached. This sum, not to exceed $6,000, was given to three educational institutions in the event of that contingency. This provision existed “ solely for the purpose of encouraging any child of mine to obtain an adequate education to prepare him or her for his or her future, life ” (language of will).
*162 The other condition about the trust for a child is in paragraph ‘ ‘ fourteenth ’ If any child, before age 35, entered a religious order, which required surrender of all the child’s property, any corpus not yet paid over would be given to the charitable and educational organizations named previously in the will. However, if the child left an order before reaching age 35, the property was to be restored to said child.
Mary Sara Molyneaux was not in being on the date of the death of her grandfather, Silas D. Molyneaux.
At this point, two questions are raised by the surviving trustee of the father’s will. First, was the general power of appointment given to the son exercised by his last will and testament? Secondly, if the power was exercised, was its exercise valid?
The first question can be quickly answered. Any disposition of all of the property of a decedent does exercise a general power of appointment (Personal Property Law, § 18; Real Property Law, § 176). There is no question that the residuary clause of the son’s will disposed of all of his property. There is also no question that the power which he possessed was a general power of appointment. Therefore, it is determined that the will of the son did exercise the general power of appointment.
The second question concerns the validity of the exercise of the power.
The power of appointment is an intriguing concept in the law. A man long in his grave is deemed to have spoken once more years after his voice is stilled. Today its most frequent use is in areas involving minimization of estate taxes. Yet it is no modern device, having been in our law since the 16th century.
Modern in origin it may not be but demanding in the craftsmanship required for proper use it certainly is. A scalpel in the hands of a surgeon can be a life-saving instrument but in the hands of one unskilled it can be a weapon of utter destruction. So, too, with a power of appointment.
In the hands of the skilled draftsman, it is a tool providing an almost limitless flexibility in the disposition of property. In other hands less skillful, it can become the instrument that thwarts the intent of the testator and crumbles an otherwise intricate plan into fragments incapable of reassembly.
Frequently the draftsman, despite detailed inquiries, never knows of the existence of a power of appointment. Such was not the situation here. The will of the father was the subject of litigation in this court in 1954 and the son was represented by counsel who later prepared his will. One can only speculate that the son, a well-educated man, had precise ideas about his *163 will which he imparted to its draftsman. One can also speculate one step further that the son expected to live at least 15 years after his father’s death to explain his execution of a will in the form which became his last will and testament. In calculating the end of his own mortal span, he was no more accurate than those small groups who from time to time over past centuries have huddled together in vain on mountain tops to await the destruction of the entire earth.
Simply stated, the instrument of the donee exercising the power of appointment becomes an integral part of the donor’s instrument which created it. To that extent, the donee’s language becomes that of the donor. The court Avith jurisdiction over the donor’s property carries out the donee’s instructions as instructions of the donor. It is as though there were a blank space in the donor’s will to be filled at some future date by the donee under the conditions prescribed by the donor.
The idea of “ relation back ” is of long standing in our law. Once this doctrine is understood, the logic of many conclusions is inescapable. Principles are often easily stated but their application to actual facts is more difficult.
The will of Silas D. Molyneaux must be deemed to contain the residuary disposition of his son’s will. Since Mary Sara Molyneaux, the son’s daughter, was not in being on the date of death of Silas D. Molyneaux, the creator of the power of appointment, her life cannot be a measuring life. The son’s will provides for the termination of the beneficial interest of his wife upon her death or remarriage, and that the property be held on a further trust until a child who was the second beneficiary attains 35 years of age. As Mary Sara Molyneaux was only eight years of age on the date of death of Silas D. Molyneaux, Jr., an extension of the trust period until she became 35 years old would be invalid because it exceeds 21 years after the last valid measuring life. (Personal Property Law, § 11; Real Property Law, § 42.)
In 1960, section 11-a of the Personal Property Law was enacted. Does this section save an otherwise invalid disposition of this property? Postponing any discussion of the conditions about a trust for a child, if the age contingency is reduced to 21 years, the disposition would be valid. This is the very type of situation for which section 11-a Avas enacted. The problem is less complicated here where only one child is involved. A thorough discussion covering the situation of a number of children, some whose measuring lives are valid, some for whom the age period is within 21 years, and one similar to the instant case is found in Matter of Pendleton (41 Misc 2d 831 [1964]).
*164 Basically all canons of construction serve one purpose. Ascertain the intent of the testator. The intent of the son is clear and convincing. He wished to provide for his wife and any child. This was paramount to any tax savings in disposing of a taxable estate in excess of $1,000,000. The claim has been made by Katharine N. Fair bairn, the onetime stepmother of the son, that the conditions in paragraph “ ninth ” relating to a loss of a maximum of $6,000 if two years of college are not completed by age 30 and in paragraph “ fourteenth ” relating to joining a religious order before age 35, which requires surrender of one’s property, so infect the testamentary plan that even application of section 11-a of the Personal Property Law will not save it.
With this contention the court disagrees. The interest of Mary Sara Molyneaux under the will of Silas D. Molyneaux, Jr., and likewise under the will of Silas 1). Molyneaux, her grandfather is vested subject to defeasance under two conditions. One concerns her education and would result in a defeasance of a maximum of $6,000. The other concerns entry into a religious order and would result in a defeasance of any principal not paid over before age 35. Even under this condition, the daughter could receive all the property if she entered an order after age 35.
The primary intent of the son was to keep this property in his family. If a child died before age 35, the corpus would go to the child’s descendants or, if there were no such descendants, to the child’s estate. It is true that by reducing the age contingency of the child, Mary Sara Molyneaux, to 21 years, the court in effect has excised the two conditions. Certainly it was not the intent of the son to benefit his onetime stepmother with whom he had litigation in this court concerning the principal invasions of the trust created for her benefit under his father’s will. Faced with this choice, the court finds that the intent of the son will be carried out by sustaining the trust through application of section 11-a of the Personal Property Law. The age contingency of the trust is reduced to 21 years and will be satisfied when Mary Sara Molyneaux attains her 21st birthday.
The other question which was not raised specifically in the petition of the surviving trustee, but which is present in the account as filed, relates to the commissions payable to the surviving trustee. The surviving trustee requests full receiving and paying commissions at this time on the theory that the trust created under the will of the father for the benefit of the son has terminated.
*165 Again, we must look to the nature of a power of appointment. The accepted theory in New York today is that the exercise of a power of appointment by the donee merely fills a blank in the will of the donor. Once the power of appointment has been exercised, the language for all legal effects and purposes is the same as though it were inserted in the will by the donor of the power of appointment.
As decided herein, the son, Silas D. Molyneaux, Jr., has exercised the power of appointment by the residuary clause in his will. Therefore, we must put into the will of the father the language of the residuary clause of the son with the same force and effect as if the father had written it.
There is no question that when a testator creates successive trusts out of the same property there will be but one set of commissions. Applying that to the present facts, the father created a trust for the son as the primary trust. The father has also created a secondary trust for the son’s wife through the power of appointment. Therefore, on the theory that both trusts are in the father’s will, this is a continuing trust under the will of the one creator.
Counsel for the trustee strongly contends that this trust has terminated, relying on Matter of Culver (294 N. Y. 321 [1945]).
This case might seem on a first reading to support the contention of counsel for the trustee. However, an excellent critical examination of this case was made in Matter of Moyse (188 Misc. 1030 [1945]). As pointed out by Mr. Surrogate Collins in the Moyse case, the Culver case involved a contract between the trustee and the testator. No such contract existed here. There is no indication in the Culver case that the Court of Appeals sought to overturn the entire body of law relating to the exercise of powers of appointment as far as “ relation back ” was concerned.
In a later case, Matter of Brown (192 Misc. 96 [1948]) the Surrogate felt that Matter of Culver did require the payment of two sets of commissions even though he doubted the wisdom of such a result. He did award separate commissions upon the authority of Matter of Culver (supra).
This court does not subscribe to the position that the Court of Appeals in Matter of Culver (supra) intended to throw out the entire existing rationale about the disposition of property and incidents thereto such as commissions under the will of the donor following the exercise of a power of appointment. If the Court of Appeals had such a conclusion in mind, this court concludes it would have clearly stated it.
*166 This court believes that the decision in Matter of Culver (supra) should be limited to the facts therein set forth. Support for this position is found in Matter of Rothfeld (120 N. Y. S. 2d 654 [1953]); Matter of Eginton (21 Misc 2d 179 [1959]) and Matter of Faroll (39 Misc 2d 309 [1963]), as well as Matter of Moyse (188 Misc. 1030, supra).
Until the matter is made clearer by statute or decision, this court will continue to follow the long line of decisional authority relating to the treatment of powers of appointment and their exercise. Based on these decisions, the trust created by the will of the son is, in effect, a trust created by the will of .the father. The surviving trustee, at this time, is entitled to receiving commissions and also to paying commissions for property actually paid out.
The last matter to be determined concerns the apportionment of estate taxes. Subdivision 4 of section 124 'of the Decedent Estate Law reads as follows: ‘ ‘ Any direction as to apportionment or non-apportionment of the tax, whether contained in a will or in a non-testamentary instrument, shall be limited in its operation to the property passing thereunder unless such will or instrument otherwise directs. ’ ’
The will of Silas D. Molyneaux, Jr., the son in paragraph “tenth”, states as follows: “I direct that all estate taxes, both state and federal, shall be paid out of my general estate and not deducted from the share of any individual devisee or legatee.”
Again adverting to the concept of the power of appointment, the property which is the subject matter of this accounting is passing under the will of Silas D. Molyneaux, the father. The language in the will of his son relates only to the property passing under his own will. Therefore, the court determines that the trust must bear its proportionate share of the Federal and New York estate taxes because no language appears in the will of the son sufficient to exonerate the trust from bearing its proportionate share of the Federal and New York estate taxes.