The **FIRST NATIONAL BANK OF CHICAGO**, Plaintiff-Appellee,

and

**Frank J. Kelly and Helen H. Hexter, Defendants-Appellees,**

**v.**

**John A. ETTLINGER**, Defendant-Appellant.

No. 71–1226.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1972.

Decided July 24, 1972.

David P. List and Henry L. Mason, III, Chicago, Ill., for defendant-appellant; Leibman, Williams, Bennett, Baird & Minnow, Chicago, Ill., of counsel.

John W. Hough and John R. F. Baer, Chicago, Ill., James J. Kenny, Miami, Fla., for defendant-appellee Frank J. Kelly; Kelly, Black, Black & Kenny, Miami, Fla., Price, Cushman, Keck & Mahin, Chicago, Ill., of counsel.

Before CUMMINGS, PELL and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

In 1922, Mr. and Mrs. John D. Hertz, Illinois domiciliaries, established two trusts for the benefit of their son, John D. Hertz, Jr. ("Hertz"). Each trust gave Hertz general testamentary powers of appointment over the corpus of the trusts. He died testate and domiciled in Florida on May 9, 1968. His last will, executed in 1965, contained a residuary clause providing in part:

"All the rest, residue and remainder of my property of whatever kind and wherever situated (herein referred to as my 'residuary estate'), after the payment therefrom of the obligations directed to be paid by article 'THIRD' hereof, I direct my executor to [distribute in varying shares to ten named residuary legatees.]"

The last article of the 1965 will provided as follows:

"Nearly all of my property is located in New York and my important financial matters and related affairs have been handled in said State for many years. Accordingly, it is my desire and I hereby direct that this my

will be originally probated in the State of New York; that my executor shall qualify in the State of New York, and, in accordance with its laws, shall administer and distribute my estate in the State of New York; that my executor shall be accountable in the Courts of that State in so far as may lawfully be done that the disposition herein contained shall be construed and regulated by the laws of said State."

In 1968, the First National Bank of Chicago, which was the trustee of the 1922 trusts, filed suit in the Circuit Court of Cook County, Illinois, to determine whether Hertz had exercised his powers of appointment thereunder. The Florida executor of Hertz's will, which had been admitted to probate in Florida, filed a petition removing the action to the district court.

The executor claimed that the powers of appointment were exercised. In default of appointment, the trust assets were to be distributed to Hertz's sister, Helen Hexter, and his nephew, John Ettlinger. Since he was not a residuary legatee, Ettlinger's answer and cross-complaint asserted that the powers had not been exercised. Mrs. Hexter, both a residuary legatee and a taker in default of appointment, first filed an answer stating that she "takes no position with regard to the issues in this suit." However, on October 31, 1969, pursuant to leave of court, she filed an amended answer asserting that Hertz did not intend to exercise the powers of appointment in his last will, and asserting in the alternative that he did intend to exercise his power of appointment in favor of the ten residuary legatees.

The district court twice refused to remand the cause to the state court. After trial, the court concluded that Hertz intended his will to dispose of all property within his control, including the assets of the two trusts in question. After

ruling that Hertz exercised the powers of appointment under those trusts, the court ordered that Hertz's executor was entitled to receive the trust assets. Consequently, the trustee was ordered to deliver the assets to the executor. As to Ettlinger's cross-complaint, judgment was also entered in favor of the executor. Ettlinger alone has appealed. We affirm.[1]

■ Appellant first argues that the district court erred in denying his motions to remand. As to the first motion to remand, the district court rendered a thorough opinion reported as First National Bank of Chicago v. Mottola, 302 F.Supp. 785 (N.D.Ill.1969). We adopt that opinion. After Mrs. Hexter filed her amended answer, Ettlinger filed another motion to remand on the ground that Mrs. Hexter had now taken a position opposed to the executor and therefore had to be aligned on the opposite side of the case from him for diversity purposes. Since Mrs. Hexter and the executor were both citizens of Florida, Ettlinger argued that there was no diversity jurisdiction and therefore remandment was necessary. However, Mrs. Hexter's amended answer was in the alternative and therefore, like her first answer, was neutral in effect, so that the district court also properly denied the second motion to remand. Although Mrs. Hexter sided with Ettlinger at the ensuing trial, the jurisdictional issues had already been decided and her change of position came too late to defeat removal. See Murphy v. Kodz, 351 F.2d 163, 167 (9th Cir. 1965); Direct Transit Lines, Inc. v. Local Union No. 406, I.B.T., 199 F.2d 89, 90 (6th Cir. 1952); IA Moore, Federal Practice, ¶¶ 0.157[12], at 382 and 0.161[1], at 529 (1965 ed.).

■■ Appellant next argues that the district court improperly applied New York law to determine whether the residuary clauses of Hertz's will exercised

---

1. Although our holding completely removes appellant as the recipient of Hertz's beneficence, he already received substantial Hertz family money through his late mother, Hertz's other sister, Leona Sacks.

his powers of appointment under the trusts. Under the rule of Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, a federal court must follow the conflict of laws principles prevailing in the state in which it sits. Therefore, Illinois conflicts rules are governing here. Both sides are in agreement that Illinois adheres to the general rule that it is normally the law of the domicile of the power's donor and not that of the donee's domicile which controls the question whether the donee effectively exercised a testamentary power of appointment.[2] In re Estate of Erdman, 264 C.A.2d 335, 70 Cal.Rptr. 774 (1968); In re O'Reilly's Estate, 371 Pa. 349, 89 A.2d 513 (1952); Anno. 150 A.L.R. 519, 531 et seq. (1944); see In re Estate of Breault, 29 Ill.2d 165, 174, 193 N.E.2d 824 (1963); Restatement, Second, Conflict of Laws § 275 and Comment c.

▆ Here the domicile of Hertz's donors, and the state whose law governs the construction, validity and effect of their trust instruments, is Illinois. However, as recited above, in his will Hertz directed that the disposition of his property be construed and regulated according to the laws of New York. The question, therefore, is whether under Illinois conflict principles the exercise *vel non* of Hertz's general testamentary powers of appointment is governed by Illinois or New York law.[3]

▆ Under the law New York would apply to a wholly domestic situation, it is clear that where, as here, no express or necessarily implied contrary intention appears, the residuary clause in a will undertaking to dispose of all the testator's property not specifically devised does exercise a general power of appointment.[4] Under local Illinois law a general residuary clause does not *per se* exercise a testamentary power of appointment over trust property. Emery v. Emery, 325 Ill. 212, 222, 156 N.E. 364 (1927); Northern Trust Co. v. House, 3 Ill.App.2d 10, 18, 120 N.E.2d 234 (1954). Rather, the intention of the testator is

---

**2.** As stated, this rule is most precisely applicable to the situation where the power was created by will, for the usual rule is that the law of the testator's domicile governs the construction of his will. See Restatement, Second, Conflict of Laws § 275 and Comment c, § 264(2) and Comment f. Here, however, the trusts granting the powers of appointment were created *inter vivos*. In this situation, it has been generally held that the state whose local law governs the creation of the trust is determinative of whether the donee exercised the power or not. See *Id.* § 275, Reporter's Note. We think Illinois would adhere to this position, and the parties have not contended otherwise. Since in this case the settlors' domicile, as well as that of the trustee, and the situs of the trust property all coincide in the state of Illinois, the law of Illinois would govern construction of the trust. See Mulford, The Conflict of Laws and Powers of Appointment, 87 U.Penn.L.Rev. 403, 409 (1939); Restatement, Second, Conflict of Laws, § 268(2) and Comment e. Because of the coincidence of these factors, it can be safely said that Illinois would follow the general rule that the state of the donor's domicile is controlling.

**3.** None of the parties relies on Florida law as determining whether the power of appointment was exercised or not.

**4.** *New York Personal Property Law*, McKinney's Consol.Laws, c. 41, Article 2–§ 18, provides:

"*Power to bequeath executed by general provision in will.* Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication."

That statute was in effect when Hertz executed all his wills as well as the two codicils to his 1965 will. Appellant concedes that a superseding New York statute, New York Estates, Powers and Trusts Law, McKinney's Consol.Laws, c. 17–b, § 10–6.1, is a re-codification of the previous New York statutes and "presumes powers to be exercised unless an intent not to exercise them appears expressly or by necessary implication." (Appellant's principal brief, p. 16, n. 5)

the ultimate test for determining whether the power is exercised by a general residuary clause. Rettig v. Zander, 364 Ill. 112, 4 N.E.2d 30 (1936); Northern Trust Co. v. Moscatelli, 54 Ill.App.2d 316, 203 N.E.2d 447 (1964); Northern Trust Co. v. Cudahy, 339 Ill.App. 603, 91 N.E.2d 607 (1950). The district court held that Illinois courts would defer to Hertz's selection of New York law, but that even under Illinois law Hertz would have exercised his powers. We agree that Illinois courts would recognize Hertz's choice of law stipulation, but nonetheless find it necessary to look to Illinois law to determine whether Hertz sufficiently manifested an intent to exercise. We will not upset the lower court's finding that he did.

"The lodestar of will construction is to ascertain and effectuate the intention of the testator, provided such is not contrary to law * * *." Carr v. Hermann, 16 Ill.2d 624, 628, 158 N.E.2d 770, 772 (1959); see Whittington v. Hunt, 296 Ill. 133, 138, 129 N.E. 543 (1920). Since Hertz designated that his will should be construed in accordance with the laws of New York, the courts of Illinois (or Florida) could only be sure to effectuate the will provisions as they were intended to operate by interpreting them according to the law of New York. In deciding whether or not to give recognition to a stipulation of what law is to govern a particular transaction, the crucial question is whether an important policy of the most interested state would be evaded thereby. A. Von Mehren and D. Troutman, The Law of Multistate Problems, 250 (1965). At least insofar as the precise question of the exercise *vel non* of the powers of appointment is concerned, no public policy of Illinois (or Florida) is thwarted by construing Hertz's will in accord with the law of his choice.[5] If that law would presume that the clause exercised the powers in the absence of clear contrary intent, Illinois courts would hardly begrudge Hertz his choice since Illinois law would give effect to a will clause exercising the powers in so many words. Thus, we think Hertz's stipulation should be respected. See Restatement, Second, Conflict of Laws, § 264(1) and Comment e.

Nevertheless, appellant contends that the choice of law clause was not intended to apply to the Illinois trusts over which Hertz had the appointive powers because the clause recites that "nearly all my property is located in New York," whereas the trusts, which had a value in excess of $900,000 at the time the will was executed, were continuously located and administered in Illinois. The district court aptly noted the above language "is obviously prefatory and not limiting." The recitation seems explicable as an attempt by the draftsman to show facial compliance with Section 47 of the New York Decedent Estate Law, McKinney's Consol.Laws, c. 13,[6] or to demonstrate the nexus be-

5. See Ill.Rev.Stats.1971, Ch. 3, § 89(b), which provides that a nonresident testator may by will designate Illinois law to govern the disposition of his personal property having a situs within Illinois. See note 6 *infra*.

6. In pertinent part that section provides: "The validity and effect of a testamentary disposition of real property, situated within the state, or of an interest in real property so situated * * * are regulated by the laws of the state, without regard to the residence of the decedent. Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property * * * are regulated by the laws of the state or country, of which the decedent was resident, at the time of his death. Whenever a decedent * * * wherever resident, shall have declared in his will and testament that he elects that such testamentary dispositions shall be construed and regulated by the laws of the state, the validity and effect of such dispositions shall be determined by such laws."
Section 47 of the Decedent Estate Law was recodified in 1967 as Section 3–5.1 (h) of the Estates, Powers and Trusts Law. It provides:
"Whenever a testator, not domiciled in this state at the time of death,

tween the state whose law was chosen and the property devised, a relationship which may have been viewed as important especially since a testamentary trust was created.[7] This language, however, would not constrain the scope of the choice of law clause to New York property. The clause manifestly applied to the entire testamentary disposition, which in turn finally encompassed all of the testator's property "wherever situated."

Comment e to § 264 of the Second Conflict Restatement states that "when the testator designates the law of a state as the applicable law in matters of construction, it is to be inferred that he intends the local law of that state to govern." While that is undoubtedly sound as a general proposition, it does not fit this case.

Hertz, who had until then resided in New York throughout his adult life, retired from active business and moved to Florida in 1959. Prior to that time he had executed three wills, in 1948, 1956, and in 1958, all in New York. In 1964 Hertz executed the first of two wills while a Florida resident. That will was prepared by the same New York law firm that had prepared his earlier wills. In the covering letter accompanying that will draft, counsel advised Hertz "that

due to the change in your residence, we have added a special provision directing that your will be probated in New York." That "special provision" is the choice of law stipulation set out above. The 1965 will retained the structure of the 1964 will because, according to the Florida draftsman of the 1965 document, he was unfamiliar with the testator's affairs and wished to take advantage of the previous form utilized by New York counsel. The choice of law stipulation in both wills was identical.

Thus it is inescapable that the choice of New York law to govern construction of the will was designed to negate the effect of Hertz's change of residence on the construction, validity and effect of his new testamentary dispositions and to provide for New York administration so that a local executor and trustee could be retained. The basic form of the residuary clause of the 1964 will was the same as that of the 1956 and 1958 wills. The stipulation of governing law can reasonably be seen only as an endeavor to have Hertz's will construed and probated in the same way it would have been had Hertz continued to reside in New York. Simply put, it is an attempt to specify that local New York law should apply as against Florida law, which might otherwise apply, but as far

provides in his will that he elects to have the disposition of his property situated in this state governed by the laws of this state, the intrinsic validity, * * * effect, interpretation, revocation or alteration of any such disposition is determined by the local law of this state."

Appellant contends, apparently by some sort of negative implication from these statutes, that New York would not permit Hertz to elect that New York law govern the disposition of property not located in that state. Not surprisingly, no authority is advanced for this proposition. Although the domiciliary state or other interested state might have some objection to the choice of New York law to govern the disposition of property not situated there if the choice defeated an interest of those states, New York generally would not. The situs provision in the above statutes reflects the rela-

tionship with New York on which New York may be able to premise its jurisdiction or application of its own law with respect to the validity and effect of dispositions as against the assertions of another interested jurisdiction. For brief accounts of the purposes of and problems with such statutes as these, see Lowenfeld, "Tempora Mutantur . . ."—Wills and Trusts in the Conflicts Restatement, 72 Colum.L.Rev. 382, 387–391 (1972), and works cited at 390, n. 58; Fleming, Florida Statutes and Illinois Non-resident Decedent's Law, 45 Ill.B.J. 28 (1956). The mention of situs in such statutes has no bearing on the question of a choice of law stipulation for construction of a will. See Restatement, Second, Conflict of Laws, § 264 and Comment e.

7. See Restatement, Second, Conflict of Laws, § 269.

as the subsidiary conflict problem involving the powers of appointment is concerned, the stipulation refers to the law New York would apply in resolving the conflict.

Had Hertz continued to reside in New York, it is clear New York courts would have looked to Illinois law to determine whether the residuary clause in Hertz's final will exercised his powers of appointment.[8] New York Estates, Powers and Trusts Law, § 3–5.1(g) (2) (A) and (B), which retains the traditional rule for determining the exercise *vel non* of an appointive power[9] provides, in pertinent part:

" * * * [T]he question of whether such power [of appointment over personal property] has been exercised at all * * * [is] determined by:

* * * * * *

"(2) In the case of a general power of appointment exercisable by will alone or a special power of appointment:

"(A) If such power was created by will, the law of the jurisdiction in which the donor of the power was domiciled at the time of death.

"(B) If such power was created by inter vivos disposition, the law of the jurisdiction which the donor of the power intended to govern such disposition."

In this case each power was created by *inter vivos* disposition, but "the law of the jurisdiction which the donor of the power intended to govern such disposition" is the same as that of the domicile of the donor, namely Illinois. See note 2, *supra*; In re McCampbell's Trust, 36 Misc.2d 108, 232 N.Y.S.2d 522 (Sup.Ct. N.Y. County, 1962); In re Deane's Will, 4 N.Y.2d 326, 175 N.Y.S.2d 21, 151 N. E.2d 184 (Ct. of Appeals of N.Y., 1958);

In re De von der Hallen's Trust, 9 Misc. 2d 927, 169 N.Y.S.2d 698 (Sup.Ct. N.Y. County, 1957). Thus Illinois law would be looked to in order to determine whether or not the powers were executed. In re Campbell's Estate, 138 Misc. 800, 248 N.Y.S. 344 (Surr.Ct. Monroe County, 1930); see cases cited immediately, *supra;* In re Flagler's Will, 4 Misc.2d 705, 158 N.Y.S.2d 941 (Surr.Ct. Duchess County, 1957); In re Trotter's Estate, 175 Misc. 356, 23 N.Y.S.2d 1007 (Surr.Ct. N.Y. County, 1940); In re New York Life Ins. & Trust Co., 209 N. Y. 585, 103 N.E. 315 (Ct. of Appeals of N. Y., 1913).

As noted earlier, Illinois law focuses on the intention of the testator as the critical element in determining whether he has exercised a power of appointment by the general residuary clause in his will. The most recent Illinois court pronouncement on the subject indicated the proposition was well settled:

"It * * * appears clear that under Illinois law the intention of the testator supersedes the formal requirements with respect to the exercise of a power of appointment, and that extrinsic evidence may be introduced to show that intention."

Northern Trust Co. v. Moscatelli, *supra,* 54 Ill.App.2d at 327, 203 N.E.2d at 452.

See also cases cited *supra* at p. 347 and Hopkins v. Fauble, 47 Ill.App.2d 263, 197 N.E.2d 725 (1964); Foster v. Grey, 96 Ill.App. 38 (1901); Funk v. Eggleston, 92 Ill. 515 (1879); Clements, Exercise of Powers of Appointment by Testamentary Residuary Clauses, 43 Ill.B.J. 164 (1954).

Because it is adequately supported, we have no warrant to upset the trial court's finding that the preponder-

---

**8.** Similarly, had Hertz died while any of his earlier wills was in force and he was a New York resident, the substantive law of Illinois would govern the exercise question. Appellee appears not to contest this proposition (Appellee's brief, p. 36).

**9.** Hoffman, Practice Commentary on New York Estates, Powers and Trusts Law, § 3–5.1, 17B McKinney's Consol.Laws of New York Ann. at pp. 454–455 (1967).

ance of the evidence demonstrated Hertz's intention to exercise the powers of appointment through the residuary clause of his will. This satisfied Illinois law. As the district court stated, the following four factors on balance show that intention:

"1. While he specifically refused to relinquish or limit his general powers of appointment in 1944, when Chicago counsel recommended that he do so for tax purposes and when his sister, Mrs. Hexter did; and while he specifically exercised these powers in his 1948 will, at no time either orally or in writing did he ever indicate an intention not to have his will govern the disposition of the assets of the two trusts. As late as his 1967 codicil, he referred to 'any Trust Funds' in specifying that the University of Miami Medical School was to receive nothing under his will. The only trusts over the corpus of which he had any control were the two here in question. The suggestion that he was there referring to possible accumulated income from the several trusts of which he was a life income beneficiary is strained at best and highly unlikely in light of the fact that his annual expenditures for living expenses in 1967 equaled or exceeded his aggregate 1967 trust income. It is equally strained to suggest that he was referring to income which might have accumulated in such trusts prior to his death and would have been payable to his estate after his death since he had no way of knowing that there would be any such accumulated unpaid income on the day of his death. The income was paid to him periodically and, depending on the date of the last payment and the date of his death, there might be nothing or a fairly substantial amount (at year-end 1967 he was paid $45,450), but it is highly improbable, that he was referring to any such possible accumulated income in his 1967 codicil.

"2. In his discussions with Miami counsel Harry L. Durant, concerning the 1964 will, and Hugo L. Black, Jr. re the 1965 will, the corpus of the two trusts was included in the value of the assets the disposition of which the wills were to govern. Durant's notes reveal that Hertz, Jr., advised him that the trusts had a value of $890,000, and that Durant thereafter made calculations as to the probable amounts of each of the residual shares on the assumption that the residue would be $890,000. Black consulted Weisl, Sr. [Hertz's New York lawyer] who informed him that the trusts' assets were approximately $800,000 to $850,000, and that the balance of Hertz, Jr's. net worth was approximately $400,000, or a gross estate before any taxes or expenses of approximately $1,200,000. Black then proceeded to make distribution calculations based on a residue estimated at $850,000, presumably the net after taxes and expenses, a figure possibly only if the trust assets are included. Hertz, Jr. specifically told Durant that while he had only an income interest in certain other trusts, both the income and corpus of the trusts known as 66 and 69, the two here involved, were his.

"3. Unless the trust assets are part of the residue, the value of the residuary shares left to his sister, close friends, advisers and longtime employees, will be a fraction of the value which both Durant and Black estimated such shares would have in their conversations with Hertz, Jr. The total value of the residuary shares allocable to his sister, Mrs. Hexter, and his former secretary, A. Grace Barrett, will not, absent inclusion of the trust assets, equal the amount of the initial payment [$100,000 to Mrs. Hexter and $25,000 to Miss Barrett] which he specified they were to receive within ten days of his death, another indication that he intended to exercise his powers of appointment.

"4. The initial inclusion of a $25,000 bequest to his nephew, John Ettlinger, and its subsequent deletion,

in light of his ambivalent at best feelings about his nephew, are both inconsistent with an intent that the latter should receive one-half of the trust assets over which Hertz, Jr. had so carefully preserved his powers of appointment and which constituted the bulk of his available assets."

Still other considerations support the same conclusion. Thus in a 1963 letter to the trustee under the 1922 trusts, Hertz explained that he had sole discretion "in naming the beneficiaries after my death of these trusts" and that they would not be in the line of inheritance. The letter then stated that his 1958 will was in the hands of a New York law firm. The purport of the letter was that Hertz's 1958 will, containing a general residuary clause, had disposed of the trust assets to persons who were "not in the line of inheritance." The same reasoning would apply to his last will.

Likewise, his then Florida lawyer testified that Hertz believed he was disposing of the assets of the 1922 trusts by his 1964 will containing a general residuary clause, and the Florida draftsman of his final will testified to the same effect about that similar document.

Although the appellant has marshaled several possible indicators of an intention not to exercise the powers, his best argument focuses on the fact that the residuary clause of Hertz's 1948 will, drawn in New York, referred to the property over which he had appointive powers, but that reference was thereafter omitted from the residuary clauses of his 1956 and subsequent wills. Since these residuary clauses would be construed according to Illinois law with reference to the exercise question, appellant

views the deletion as demonstrative of an intent not to exercise the powers.

The mere omission of reference to the appointive property does not demonstrate the testator's intent not to exercise his appointive powers, especially in the face of all the countervailing evidence. Certainly there are other reasonable explanations why the 1956 and subsequent wills' residuary clauses did not use the "any property over which I may have the power of appointment" language.[10] Notably the difference between the 1948 and 1956 residuary clauses is not merely the omission of the above language from the latter but is a broader change of style and format. Moreover, the New York law firm which drafted Hertz's 1948, 1956, 1958 and 1964 wills, and whose will format was used in the 1965 will, must have been aware that under local New York law, a general residuary clause like Hertz's was presumed to bequeath any property over which the testator possessed appointive power.[11] Although we should not readily assume that Hertz's New York counselors might have overlooked the fact that another state's law, which did not embody the New York presumption, would govern whether the residuary clause exercised any appointive power, if, as appellant contends, the deletion of reference to the appointive property was designed to manifest testator's intent not to exercise, we would then have to assume Hertz's attorneys made the equally egregious error of failing to draft a provision explicitly renouncing the exercise of the power![12] It must be remembered that the law of Illinois is not, and was not when the 1956 will was drafted, to the effect that failure to mention specifically a power of appointment

10. It is noteworthy that in 1950 Professor Casner "condemned strongly" to the Estate Planning Bar language in residuary clauses for the purpose of exercising powers of appointment that is practically identical to that used in Hertz's 1948 will but deleted from his 1956 and subsequent wills. Casner, Estate Planning—Powers of Appointment, 64 Harv.L.Rev. 185, 202 (1950).

11. See note 4 *supra*; In re Molyneaux' Will, 44 Misc.2d 159, 253 N.Y.S.2d 75 (Surr.Ct. Broome County, 1964).

12. See Casner, *supra*, note 10 at 202–203; A. James Casner, Estate Planning, 770 (Student ed. 1961); Durand and Herterich, Conflict of Laws and the Exercise of Powers of Appointment, 42 Cornell L.Q. 185, 191 (1957).

in an all-inclusive residuary clause precludes its being considered executed. As set out above, Illinois law focuses on the intention of the testator to determine whether his general residuary clause exercises appointive powers and admits extrinsic evidence to show that intention.[13] Hertz's attorneys could not possibly have conscientiously relied on the absence of any presumption of exercise in Illinois law as ensuring that the deletion of mention of appointive property in his residuary clause would carry out the testator's intention not to exercise, assuming he had such intention.

Appellant's best argument is thus unpersuasive, as are his others. Taken together they do not impeach the district court's finding that Hertz intended to exercise his general testamentary powers of appointment. Since this finding has not been shown to be "clearly erroneous" within Rule 52(a) of the Federal Rules of Civil Procedure, it is controlling. Therefore, the judgment is affirmed.

13. See especially Rettig v. Zander, 364 Ill. 112, 120–121, 4 N.E.2d 30 (1936).